**G. C. WEAVER, Jr., Appellant,**

**v.**

**NATIONAL FIDELITY INSURANCE COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

June 21, 1963.

Rehearing Denied April 17, 1964.

John G. Prather, Fritz Krueger, Somerset, for appellant.

Ben D. Smith, Smith & Blackburn, M. D. Harris, Somerset, for appellees.

CHARLES M. ALLEN, Special Commissioner.

This is an appeal from the judgment of the Pulaski Circuit Court entered on July 7, 1961, awarding to the appellee, National Fidelity Insurance Company, $4,974.69 on its counterclaim and dismissing the complaint of the appellant, G. C. Weaver, Jr.

Appellee issued on January 5, 1959, an insurance policy including collision coverage for the actual cash value of a Mack diesel truck and a Diamond T truck owned by the appellant subject to a $250 loss deductible clause. On May 11, 1959, the Mack truck was damaged beyond repair in a collision near Celina, Ohio, a point more than 150 miles from Burnside, Kentucky, the principal place of garaging of the truck and at a time when the truck was en route to Ft. Wayne, Indiana, some 325 miles from Burnside.

The insurance policy had attached an endorsement which provided as follows:

"In consideration of the premium at which the Policy designated above is issued, it is warranted by the insured that no regular or frequent trips of commercial vehicles described in such Policy are or will be made during the policy period to any location beyond a 150 mile radius from the limits of the city or town of principal garaging of such vehicles."

The policy also contains a loss payable clause in favor of parties who had financed the vehicle, the principal due at the time of the collision to the mortgagees being $4,974.69. This sum was duly paid to the mortgagee, Mack Truck Company.

Upon the refusal of the insurance company to pay appellant's claim on account of the alleged breach of the above-quoted clause, appellant instituted the instant action. The proof which was taken on depositions shows that the appellant operated his two trucks a total of 105 times between January 5, 1959, and May 11, 1959, and of these 105 trips 82 were within the 150 mile radius. The proof showed that 23 of the trips during this period were for distances over 150 miles; 4 being made to Pittsburg, 5 to Detroit, 5 to Muncie, Indiana, 1 to Waverly, Ohio, 1 to Dayton, Ohio, 5 to Ft. Wayne, Indiana, and 1 to Franklin, Ohio. Pittsburg and Detroit are approximately 425 miles from Burnside, Ft. Wayne is 325 miles, and the other cities are more than 150 miles but less than 325 miles. Appellant was unable to state how these trips were distributed between the two trucks.

The decisive question before this Court is whether or not the lower court erred in holding that the 23 trips made over the 150 mile limit constituted "regular" or "frequent" trips within the meaning of the policy.

The trial court in rendering its decision evidently relied upon the case of Indiana Rolling Mill Baling Corporation v. National Automobile & Casualty Insurance Company, D.C., 141 F.Supp. 831, affirmed 7 Cir., 240 F.2d 74 and Kindred v. Pacific Automobile Insurance Company, 10 Cal.2d 463, 75 P.2d 69. The Indiana Rolling Mill case, supra, involved the use of a truck in the Cincinnati metropolitan area for a period of 18 days when this area was more than 50 miles from Ft. Wayne, Indiana, the place of principal garaging of the truck. These trips occurred several times a day and were held to violate the terms of the policy which contained a restriction on the regular or frequent use of the truck beyond a 50 miles radius. The Kindred case, supra, is substantially similar to the Indiana Rolling Mill case.

The appellant relies upon McCoy v. Elliott, D.C., 72 F.Supp. 790, affirmed Pennsylvania Casualty Co. v. McCoy, 5 Cir., 167 F. 2d 132. There the insurance policy con-

tained an endorsement which provided that the regular and frequent use of the truck was to be confined to the territory within a 500 mile radius of the limits of the city or town of principal garaging. The truck was garaged at Laurel, Delaware. It was involved in a collision in Florida, more than 500 miles from Laurel. The truck had made two trips to Florida within the preceding six weeks and was on its last trip for that season when the accident occurred. The court held that this was a limited use beyond the 500 mile radius and did not void the policy.

In the case of Bruins v. Anderson, 73 S.D. 620, 47 N.W.2d 493, the Supreme Court of South Dakota held that where the truck in question was engaged in trips over the mileage limit specified in the insurance policy for about 10% of its total trips this was not enough to constitute a frequent use so as to relieve the insurer from liability.

■ Our decision turns on the meaning of the word "frequent" as it is apparent that the use by the appellant of his truck beyond the 150 mile radius does not come within the meaning of the word "regular." In making our decision we have in mind the fact that, although the trucks were only used 22% of the time between the issuance of the policy and the date of the accident on trips over the 150 mile limit, the frequency of the trips was increasing with each month and in the month during which the accident occurred amounted to almost 42% of the total.

Webster's New International Dictionary, second edition, gives the following definition of the word "frequent": "Often to be met with, happening at short intervals, often repeated or occurring 'as frequent visits.'" It appears to us that 23 trips occurring within a period of 4 months and 10 days constitute happenings at short intervals. Certainly 5 trips within 12 days would come within this definition.

■ We are mindful of the rule that where there is any doubt or ambiguity in the meaning of an insurance policy, it should be liberally construed in favor of the insured and any doubt then resolved against the insurer. As a corollary to that rule, however, the courts cannot make a different insurance contract for the parties by enlarging the risks contrary to the natural and obvious meaning of the existing contract. We do not believe that the parties to this contract intended that the insured should be making frequent trips of more than twice the radius covered by the contract.

■ We come now to the appellant's second contention which is to the effect that even if the policy did not cover the loss in question the insurance company is estopped to rely upon the 150 mile clause contained in the endorsement because of the fact that its insurance agents, Mr. Sams and Mr. Hughes, had knowledge of the operations of the appellant.

The proof falls far short of showing that Mr. Sams, the agent who issued the policy for the appellees, knew the exact operations of the appellant. All that he knew was that occasionally appellant would go beyond the 150 mile radius of operation. Such knowledge is not sufficient to bring him within the principle of law that an insurance company accepting an insured's payment of premium and knowing facts rendering the policy void is estopped to say that the policy is not operative. See Glens Falls Insurance Company v. Elliott, 223 Ky. 205, 3 S.W.2d 219.

As far as Mr. Hughes is concerned, he was not an agent for the appellee insurance company and had no authority to waive any provisions of the policy on its behalf. Moreover, the most that can be said for his testimony is that he knew that there was an occasional trip by the appellant beyond the 150 mile radius.

It is our opinion that the judgment should be affirmed.

The opinion is approved by the Court and the judgment is affirmed.