**MILES CONSTRUCTION COMPANY, Miles Lumber Company and Miles Fiterman, Appellants,**

v.

**BUFFALO INSURANCE COMPANY, a New York Corporation, Appellee.**

**No. 18260.**

United States Court of Appeals
Eighth Circuit.

Nov. 29, 1966.

Joe A. Walters, of O'Connor, Green, Thomas, Walters & Kelly, Minneapolis, Minn., for appellants. Kenneth B. Jones, Jr., Minneapolis, Minn., was with him on the brief.

J. W. Cragg, of Cragg & Barnett, Minneapolis, Minn., for appellee.

Before VOGEL, Chief Judge, and VAN OOSTERHOUT and LAY, Circuit Judges.

VOGEL, Chief Judge.

This is a declaratory judgment action instituted by Buffalo Insurance Company, a New York corporation, plaintiff (appellee) against Miles Construction Company, Miles Lumber Company and Miles Fiterman, defendants (appellants) to determine its liability under an insurance contract issued by it on defendants' vehicles for the calendar year 1964. The parties will be designated herein as they were in the trial court. The corporate defendants and their president, the individual defendant Miles Fiterman, are engaged in the manufacture and sale of lumber, pre-cut homes and garages. In their business they maintain a fleet of trucks, tractor-trailer units and other vehicles. On September 22, 1964, one of the defendants' tractor-trailer units was involved in a fatal accident in Iowa while delivering lumber to a customer. An action for damages by reason of wrongful death was commenced against the defendants in Iowa. It was defended there by the plaintiff but under a reservation of rights agreement. The question in this case primarily involves the effect to be given an amended endorsement of plaintiff's policy issued to the defendants and effective January 1, 1964, which reads as follows:

"It is agreed that *such insurance* as is afforded by the policy of bodily injury liability, for property damage liability and for automobile medical payments, with respect to the automobile described above or designated in the policy as subject to this endorsement, *does not apply, if regular or frequent trips of the automobile exceed a fifty mile radius of the limits of the city or town where such automobile is principally garaged* as stated in the declarations, *to any accident which oc-*

*curs during any such trip, or return therefrom,* other than an accident which occurs during the use of such automobile for personal, pleasure or family purposes on a trip beyond such fifty mile radius." (Emphasis supplied.)

The District Court, the Honorable Gunnar H. Nordbye, held that plaintiff was entitled to a declaratory judgment and that its policy endorsed as above did not afford coverage to the defendants by reason of the accident of September 22, 1964, in Iowa. Judgment was entered thereon and the defendants brought this appeal. We affirm.

Miles Fiterman, the individual defendant, is president of the two corporate defendants, their principal stockholder, and director. Knowledge on his part is knowledge on the part of the corporate defendants. In addition to Miles Construction Company and Miles Lumber Company, there are approximately fourteen Miles Home Companies incorporated in as many states in the upper Midwest. Miles Fiterman is also president of such subsidiary companies. Additionally, he had other corporations such as Fitco Investment Company, which was engaged in the writing of insurance, and Miles Pre-Cut Garages, Inc. The Miles Home Companies are individual selling organizations within their respective states. All materials to be furnished as a result of sales made in the various states are sent out from Minneapolis, Minnesota. Defendants have no other place of assembly or manufacture than Minneapolis. As to the frequency of trips in excess of the 50-mile limit from Minneapolis, Minnesota, Judge Nordbye found as follows:

"The testimony establishes that some of defendants' drivers spent as much as 50 per cent of their time driving the 'long-haul'—over 50 miles from the Minneapolis metropolitan area. Trips were not made beyond the 50 mile radius on any scheduled basis, but made as deliveries required. There is testimony that the four or five tractor-trailer units owned by Miles were on the road outside the metropolitan area

about 80 per cent of the time. Four of Miles' drivers would average 1,800 miles a week during the summer. Miles Fiterman himself estimated that in September and October, 1964, there were approximately 30 trips beyond 50 miles; in May, June and November there were approximately 20 such trips; in July and August 25 trips; 10 trips in December; six in April and only about 9 trips from January through March. Although 'regular' trips might imply scheduled, certainly on this evidence the trips undertaken by defendants beyond 50 miles admittedly were 'frequent' trips within the meaning of the endorsement. And that the vehicle in Iowa when this accident took place was on a regular or frequent trip outside the 50 mile radius must be conceded. Although defendants contend that the 'regular or frequent' language is ambiguous, several courts have enforced similar provisions. See, e. g., Indiana Rolling Mill Baling Corp. v. National Auto. & Cas. Ins. Co., 240 F.2d 74 (7 Cir. 1957); Kelley [Kelly] v. Phoenix Assur. Co. of New York, 225 F.Supp. 592 [562] (D.Md.1964); Kindred v. Pacific Auto. Ins. Co., supra [10 Cal. 2d 463, 75 P.2d 69]."

Stanley Korengold is a close friend of Miles Fiterman and has been for many years. Korengold is an attorney and as such for a number of years represented Miles Fiterman and his various interests. The Barr-Korengold Agency, through which Korengold was engaged in the insurance business, also has written insurance for the Miles interest at least since 1947, although in more recent years Korengold became so much involved with the insurance business that by mutual agreement he gave up acting as attorney for the Miles interests. The insurance written by Barr-Korengold was gradually reduced until, by the mid-1950's, it wrote only the liability policy on the trucks. In 1947 the Miles interests started with but one truck. This expanded so that on September 22, 1964, the date of the

accident, the Miles interests had approximately "25 pieces of rolling equipment".

■ There can be no question about the correctness of the trial court's finding that the truck involved in the accident was engaged in "regular or frequent trips" in excess of a 50-mile radius from Minneapolis, Minnesota. We further agree with the trial court in its conclusion that the endorsement in question was a part of the contract of insurance between the plaintiff and the defendants and that it was in no way ambiguous insofar as it referred to coverage. By its very plain language it states that if regular or frequent trips of the insured vehicle exceed a 50-mile radius of the limits of the city or town of principal garaging, there will be no coverage for any accident which occurs during such trip or return therefrom. It was the defendants' theory, however, that Miles Fiterman was unaware of the provisions or purport of the endorsement and that he expected that at the end of each year an audit would be made and premiums charged on the basis of such audit, it being conceded that there was a very substantial increase in insurance premiums for vehicles that regularly or frequently exceeded the 50-mile limit as opposed to vehicles which did not do so. A comparison of such rates based on 1964 indicated a difference of approximately $1,000 per unit. The question of Miles Fiterman's awareness of and understanding of the endorsement, supra, becomes crucial. The trial court specifically found:

"* * * that Mr. Fiterman was aware of the modified endorsement devised by Mr. Korengold and was reconciled to accept this restriction with the benefits of the reduced premium, apparently upon the assumption that the increased radius of the operation of his trucks would not be considered sufficiently frequent or regular so as to deny coverage under the policy."

We think the trial court's finding that Mr. Fiterman was "aware of the modified endorsement" and that he was "* * * informed of the nature and type of the restrictive endorsement" is based on very substantial testimony and may not be reversed by an appellate court. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. See, e. g., Commissioner of Internal Revenue v. Duberstein, 1960, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218, 1228; Cole v. Neaf, 8 Cir., 1964, 334 F.2d 326, 329; Republic Rice Mill, Inc. v. Empire Rice Mills, Inc., 8 Cir., 1963, 313 F.2d 717, 720–721.

In the first place, the endorsement is open, obvious, definitely a part of the insurance contract and has to do with coverage. There is an assumption that the defendants knew and were aware of the open and obvious provisions of the endorsement. Such endorsement was in no way ambiguous as it referred to coverage. Clearly, "It is agreed that such insurance * * * does not apply, if regular or frequent trips of the automobile exceed a fifty mile radius * * *, to any accident which occurs during any such trip, or return therefrom, * * *."

But there is much additional evidence supportive of that presumption, such as Korengold's own statements. He testified:

"Q. It [the conversation between Korengold and Fiterman] would be after the issuance of the amended endorsement and its delivery to Mr. Fiterman, is that correct?

"A. Yes.

"Q. And what was the substance of the conversation about that endorsement?

"A. Well, the only thing that I recall was that Mr. Fiterman said that he understood that the policy covered a 50-mile limitation, except that it permitted trips that were not regular or frequent.

*     *     *     *     *     *

"By Mr. Cragg: Q. Did the conversation refer to the endorsement, as such?

"A. It referred to the policy with the endorsement."

While Fiterman denied any such conversation, other evidence also justified and supported the trial court's finding. For

example, as to a prior policy, Fiterman wrote the Barr-Korengold Agency as follows:

> "With respect to the 1955 Ford Tractor that you have represented on the schedule as being limited to 50-mile use, we think we should be entitled to some rate reduction for this particular unit."

In spite of an explanation by Fiterman, the trial court was justified in concluding that Fiterman knew about usage within and outside of the 50-mile radius and the method of basing premium charges thereon. Fiterman was an able and experienced businessman. One of his many corporations was directly involved in the writing of insurance. We find that the trial court's conclusion of awareness and knowledge is amply sustained in the record.

Cases wherein restrictive endorsements similar to the one involved herein have been held binding upon the insured include Indiana Rolling Mill Baling Corp. v. National Auto & Cas. Ins. Co., 7 Cir., 1957, 240 F.2d 74 (coverage inapplicable when bailee of truck used it for "frequent" trips beyond the 50-mile endorsement limitation); Kelly v. Phoenix Assur. Co. of New York, D.C.Md., 1964, 225 F.Supp. 562 (coverage denied when there were "frequent trips" which far ·exceeded the 50-mile limitation); Kindred v. Pacific Auto. Ins. Co., 1938, 10 ·Cal.2d 463, 75 P.2d 69 (coverage inapplicable when commercial vehicle was "frequently" used to make fruit deliveries beyond the 50-mile limitation); Weaver v. National Fidelity Ins. Co., Ky., 1963, 377 S.W.2d 73 (where use of the insured's vehicles 22% of the time in excess of the mileage limitation constituted "frequent" trips within the policy provision and accordingly justified a finding of no coverage); Sowers v. Iowa Home Mut. Cas. Ins. Co., Wyo., 1961, ·359 P.2d 488 (coverage denied when trips beyond the 500-mile limitation provision ·were found to be not "occasional" but "regular").

Defendants also claim as error the con-·clusion of the trial court that Barr-Kor-

engold Agency was only a "soliciting agent" and denial of reformation of the policy. In view of our holding with reference to awareness and knowledge, these points become immaterial and need not be discussed.

Affirmed.