**AMERICAN STATES INSURANCE COMPANY, Appellant,**

v.

**MO–LEX, INC., Appellee.**

Court of Appeals of Kentucky.

April 26, 1968.

John L. Davis, Stoll, Keenon & Park, Lexington, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for appellant.

Richard Vimont, Herbert D. Sledd, Brown, Sledd & McCann, Lexington, for appellee.

DAVIS, Commissioner.

A jury awarded the appellee $45,000 as compensation for fire damage to a building covered by a policy issued by the appellant company. The appellant seeks reversal of the judgment entered upon the verdict asserting (1) that it was entitled to a directed verdict, (2) that the court erred in refusing a tendered instruction, (3) that the court committed error in rejecting competent evidence offered by the appellant, (4) that it was error for the court to permit the jury to take the insurance policy into the jury room while considering its verdict, (5) that improper argument was made to the jury by appellee's counsel, and (6) that the verdict was contrary to the weight of the evidence.

Appellee owned the old St. Joseph Hospital property, which it had purchased at $125,000 in November 1964. The property had not been used as a hospital since 1959, and the buildings had stood vacant except for a thirteen-month period in 1960–61 when they were occupied by some Fayette County offices during remodeling of the courthouse. A fire occurred in one portion of the unoccupied buildings on January 16, 1965. Appellee had obtained a fire insurance policy from appellant company in the principal amount of $62,500. Representatives of appellant had inspected the property prior to and incident to issuing the policy.

The appellant initiated the litigation now before us by filing a declaratory judgment action in which it asserted that it was not obligated to make any payment to the appellee under the insurance policy. The basis of its complaint was appellant's contention that appellee had violated the vacancy permit in failing to properly close and secure the buildings. Appellee made counterclaim asserting its right to recover the face amount of the policy and demanded trial by jury. The jury rejected appellant's contention that the vacancy permit had been violated, and appellant makes no claim on this appeal as respects that phase of the case. The primary contention of the appellant is that the vacant buildings had no economic value so that the appellee is not entitled to any indemnification under the fire insurance policy. The fundamental concept urged by the appellant is based upon the rule announced in McAnarney v. Newark Fire Ins. Co., 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149. The McAnarney rule is thus treated in 49 Columbia Law Review, Pages 822, 823, where it is written:

"In McAnarney v. Newark Fire Insurance Co., the New York Court of Appeals rejected both market value and replacement-cost-less-depreciation as the correct measure of damages under the New York Standard Form, and held that:

'Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. It may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well as any other fact tending to throw light upon the subject.'

Implicit in the opinion is the recognition that fixed standards of recovery would violate the principle of indemnity upon which insurance contracts are based. 'Actual cash value' is defined by the New York Court of Appeals as the economic value of the building as distinguished from its replacement value. Under the McAnarney rule, the insured is to be put in as good a condition, insofar

as practicable, as he would have been in had no fire occurred, the measure of loss being determined from all available evidence. The McAnarney case, while not the first to arrive at this result, has, because of the eminence of the court, become a leading case in the field of insurance valuation in many of the jurisdictions utilizing the New York Standard Form Policy which was construed therein.

"In practical effect, the absence of a fixed standard hinders the property owner in estimating the insurable value of his property. Unless he has been able to anticipate the insurance company's computation of 'actual cash value,' he may have no choice but to settle at the insurer's figure or else bear the expense of litigation. However, the insurer is equally reluctant to litigate the question, and, as the scarcity of cases indicates, most losses are adjusted amicably."

The same rule is discussed in Couch on Insurance 2d, Section 54:137, in which it is referred to as the "broad evidence rule" and where it is said:

"In recent years, a number of courts, seeking to effectuate more complete indemnity, have adopted the broad evidence rule to determine actual cash value of property at the time of loss. Under this rule, the trier of facts may consider any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of loss. In applying this broad evidence rule, the courts have not abandoned consideration of either market or reproduction or replacement values in arriving at 'actual cash value,' but view them merely as guides in making that determination, rather than shackles compelling strict adherence thereto.

" 'Actual cash value' within fire policies limiting recovery to the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the prop-erty, is not synonymous with replacement cost, or even replacement cost less depreciation."

For further discussion of the matter, see 61 A.L.R.2d 711 et seq.

In its brief the appellant concedes that the appellee presented evidence which was not controverted by appellant showing that the cost of restoration, based on current reproduction costs, would exceed $440,000. To counter this, the appellant had witnesses who testified that in their judgment the buildings were a burden rather than an asset, because of obsolescence. One witness for appellant testified that in his judgment the buildings had value of $62,500 just before the fire in their then depreciated and obsolescent condition. This witness estimated that the fire occasioned loss of 13.88%, from which he computed that the loss in value was $8,675.

Although the appellant asserts in its brief that its evidence was uncontradicted, we find that the record shows competent testimony in behalf of the appellee that the buildings were worth at least $150,000 before the fire. As we have just mentioned, one of appellant's witnesses ascribed as much as $62,500 in value to the buildings before the fire. It is clear, we think, that there was evidence warranting submission of the issue to the jury as to what the actual cash value of the property was at the time of the loss. It is plain that the jury recognized that the cost of restoration was not the conclusive measure and that the jury took into consideration the theory advanced by the appellant and supported somewhat by its witnesses. For these reasons, we find no merit in the appellant's contention that it was entitled to a directed verdict or, in the alternative, to a judgment n. o. v. Neither are we persuaded that the evidence in behalf of appellant was so overwhelming as to require that the jury's verdict be limited to $8,675.

The parties recognize that the usual measure of damages for partial loss

of a building by fire is such sum as is sufficient to restore the building to the same condition it was in prior to the fire, if that can be done at a reasonable cost. Great American Ins. Co. v. Crume, 292 Ky. 475, 166 S.W.2d 813. The trial court instructed within the purview of the rule announced in the Crume case and substantially in the form indicated in 2 Stanley, Instructions to Juries, Section 442. The appellant candidly calls attention to Commercial Union Assur. Co. v. Howard, 256 Ky. 363, 76 S.W.2d 246, in which this court recognized that the usual instruction fixing the measure of damages for partial loss necessarily encompasses the element of depreciation as it affects a building's value. It seems to us that parity of reasoning impels the idea that obsolescence as well as depreciation is implicit in the instruction which directs that the difference in value is to be determined by the reasonable cost of repairing any damage to the building caused by the fire or restoring the building to as good a condition as it was in immediately before the fire. Therefore, it was not error for the trial judge to refuse the instruction offered by appellant in this language:

> "The Court instructs the jury that, if they should believe from the evidence that the building referred to as the 'old St. Joseph Hospital' was, either by reason of obsolescence or depreciation, not used or useful for any practicable economic purpose, then the jury will find for the plaintiff such a sum in damages as represents the fair and reasonable market value of the salvable material damaged or destroyed by the fire."

■ By avowal the appellant showed that appellee had sold the property in its fire-damaged condition for $200,000, slightly more than three months after the fire. Appellant contends that it was prejudicial error for the court to refuse to permit this evidence to be heard by the jury. We are unable to accept this contention. The issue was the reasonable cost of restoring the building to its before-fire condition. The sales price of the entire property at a later date had no relevance to that issue, and it was not error to exclude evidence of it.

■ After the case had been submitted to the jury, the jury's foreman requested the court to permit the jury to have the insurance policy in the jury room. The court directed that the jury was entitled to take all of the exhibits or none of them, whereupon the jury took them all. The insurance policy had been introduced into evidence without objection. We are unable to perceive any basis for reversal in the court's permitting the jury to have the exhibits which had been presented in evidence.

■ During the course of final argument, appellee's attorney made reference to the fact that the arbitration provisions of the policy had been frustrated by appellant's precipitate filing of the declaratory judgment suit without affording appellee any opportunity for arbitration. As noted, the policy was introduced into evidence without objection. Appellee asserts that its closing argument about the arbitration clause was merely responsive to several earlier statements by counsel for appellant proclaiming a theme of "fairness." The trial court was so persuaded. Even if we were to regard the argument as objectionable, we are unable to find that any prejudicial error could have resulted from it.

■ The final assault on the judgment rests on the claim that the verdict is contrary to the evidence. The basis for this argument is that the verdict of $45,000 is not supported by any witness in the case. It is true that no individual witness used the figure of $45,000 in expressing estimate of the appellee's loss. However, the composite effect of the evidence was to reflect a potential cost of over $400,000 to restore the building, which was affected by the evidence indicating obsolescence, depreciation, and lack of economic

value. The verdict is within the range of the varying estimates and is supported by sufficient evidence.

The judgment is affirmed.

All concur.