Ethel Lillian PIERCE, Appellant,

v.

WEST AMERICAN INSURANCE COMPANY, Appellee.

Court of Appeals of Kentucky.

Aug. 5, 1983.

Bill V. Seiller, Ewen, MacKenzie & Peden, P.S.C., Louisville, for appellant.

David A. Harris, John T. Ballantine and D. Brian Rattliff, Ogden, Robertson & Marshall, Louisville, for appellee.

Before HOWERTON, COOPER and DUNN, JJ.

DUNN, Judge.

The appellant, Ethel Lillian Pierce, sued the West American Insurance Company, appellee, in the Jefferson Circuit Court alleging that it failed to pay her a loss she sustained as a result of a series of transactions with the Citizens Fidelity Bank & Trust Company on a checking account in her name through electronic fund transfers by means of what the bank calls a "Service Tree Card" inserted in an automated teller machine. She alleged in her complaint that the loss was covered by a policy of insurance she had procured with the appellee-company and that she was damaged as a result of the breach of the insurance contract in the amount of $2,000.00. The Jefferson Circuit Court overruled the appellant's motion for summary judgment and entered a summary judgment in favor of the appellee-company holding that a "Service Tree Card" is not a "Credit Card" within the meaning of the insurance policy and accordingly the loss sustained by the appellant was not covered by the insurance contract. The trial court also held that the action having been brought more than a year after the last date of loss on June 12, 1980, was barred by the one year contractual limitation set forth in the policy. It is from this judgment that appellant appeals.

Appellant is a widow in her seventies who is disabled due to several strokes. As a result of her disability, the appellant at one time employed a housekeeper, Ruth Hart.

During Ruth Hart's employment, the appellant maintained a checking account at Citizens Fidelity Bank & Trust Company. She gratuitously received in the mail a "Service Tree Card" from the bank. This card was distributed by the bank to its customers for the purpose of using automated teller machines to make deposits and withdrawals from checking accounts. These are commonly referred to in the banking industry as "electronic fund transfers." In order to use the card, a person needs both possession of the card and the knowledge of the customer's "personal security number."

Upon receipt of the card, appellant gave it to Ruth Hart with instructions to destroy it. Instead of doing so, Ruth Hart kept it, obtained one of the bank's applications for a personal security number, forged the plaintiff's signature to it, presented it to the bank, and obtained the personal security number applicable to appellant's account. She then used the "Service Tree Card" and personal security number to withdraw and appropriate for herself $12,500 from appellant's checking account during a period from December 12, 1979, to June 12, 1980. Each individual withdrawal involved either $100.00 or $200.00.

On or about May 16, 1979, appellee-insurance company issued to the appellant a homeowner's policy of insurance covering the period from May 16, 1979, to May 15, 1980. On or about May 16, 1980, the defendant renewed the policy of insurance for the period from May 16, 1980, to May 15, 1981.

Each policy of insurance contained the following terms and provisions with respect to coverage:

Credit Card, Forgery and Counterfeit Money. We will pay up to $500 for:
a. the legal obligation of any insured to pay because of the theft or unauthorized use of credit cards issued to or registered in any insured's name. We do not cover use by a resident of your household, a person who has been entrusted with the credit card, or any person if any insured has not complied with all terms and con-

ditions under which the credit card is issued.

B.  *loss* to any insured *caused by forgery* or alteration *of any check* or negotiable instrument...;

Pursuant to a Special Amendatory Endorsement, the amount of coverage under these terms and provisions was increased from $500 to $1,000.

Of the $12,500 withdrawn from the appellant's checking account, more than $1,000 was withdrawn during the first policy period and more than $1,000 was withdrawn during the second policy period.

The appellant herself did not have knowledge of the unauthorized withdrawals until June 26, 1980.  On June 24, 1980, she employed a new housekeeper who saw appellant's bank statement and notified the bank of the unauthorized withdrawals.  On February 3, 1981, the appellant notified her insurance company of the unauthorized withdrawals from her checking account and made a claim for such losses under the policies of insurance.  The company denied her claim.  Thereafter appellant instituted this action against the company which resulted in the summary judgment in question against her.

On appeal she contends that the trial court erred in relation to the coverage question in basing its decision on the "credit card" provision of the policy.  She argues that the applicable coverage is that provision of the policy that insures her against loss "caused by forgery or alteration of any check or negotiable instrument."  We disagree with her contention.  Neither provision is applicable.

Since rejection of this contention is dispositive of this case, we need not address the issues posed by her other arguments or those of appellee or the trial court's holding concerning the issues of policy defenses, lack of notice within a reasonable time, policy limitation of one year to bring suit, and limitation of the company's liability.

We agree that the trial court's reliance in rejecting coverage on the fact that a "Service Tree Card" is not a "credit card" ignored the provision of the policy that provided coverage for loss caused by "forgery of any check or negotiable instrument."  However, its judgment cannot be overturned merely because it based its decision on erroneous grounds.  *Newman v. Newman*, Ky., 451 S.W.2d 417 (1970);  *Haddad v. Louisville Gas and Electric Co.*, Ky., 449 S.W.2d 916 (1969).

The narrow question before us is: Was the loss to appellant caused by "forgery or alteration of any check?"  The only forgery involved was not the forgery of a check, but Ruth Hart's forgery of the personal security number application.  The use of the "Service Tree Card" did not require any forgery or alteration of it in order for Ruth Hart to use it.  Appellant argues that the card is sufficiently analogous to a "check" and that the loss involved falls within the policy provisions.

The following comment concerning the use of "electronic fund transfers," vis-à-vis the use of checks or other traditional methods of fund transfers, is made in Am.Jur.2d New Topic Service, *Consumer and Borrower Protection*, § 156 (1982): "The impersonal nature of the transaction involved in electronic fund transfers makes them vulnerable to crime, ..."

It is obvious that the personal nature of transactions involving the use of checks or other negotiable instruments, where signatures of payers or drawers can be scrutinized to guard against forgeries, is a lesser risk than that involved in the use of electronic fund transfers.  It is this lesser risk that the specific terms of the policy contemplate.  Terms in an insurance policy are to be given their plain meanings, and courts should not make a different insurance contract for the parties by enlarging the risk contrary to the natural and obvious meaning of the existing contract.  *Weaver v. National Fidelity Insurance Co.*, Ky., 377 S.W.2d 73 (1963).  For us to hold that the "Service Tree Card" is analogous to a "check" would have the effect of making a different insurance contract by virtue of the enlarged risk.  This we may not do. The coverage that appellant urges, i.e. loss

sustained by forged checks, is, therefore, not applicable under these circumstances.

The summary judgment of the Jefferson Circuit Court is AFFIRMED.

All concur.