**Mable SNELLEN, Plaintiff,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant.**

**Civ. A. No. 86–0928–L(CS).**

United States District Court,
W.D. Kentucky,
Louisville Division.

Oct. 9, 1987.

Daniel T. Albers, Kelly & Albers, Louisville, Ky., for plaintiff.

Lee E. Sitlinger, Sitlinger, McGlincy & Steiner, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

SIMPSON, District Judge.

In this case, the plaintiff, Mable Snellen, seeks a declaration of her rights under a homeowner's policy issued by the defendant, State Farm Fire and Casualty Company, as well as damages for breach of the insurance contract. It is before the Court on cross-motions for summary judgment.

It is undisputed that the plaintiff owned a home near Clermont, Kentucky, which was severely damaged by fire on November 22, 1985. At the time, the plaintiff was covered by a homeowner's insurance policy issued by the defendant. The plaintiff has complied with all policy terms and conditions. The dispute here centers on the defendant's method of adjusting the plaintiff's fire loss. Also at issue is whether the plaintiff's personal property losses in excess of the personal property coverage limitation are insured under the "loss of use" coverage in the policy. The plaintiff also raised an issue as to her entitlement to payment for debris removal, but the defendant has conceded coverage for this item.

### I. FIRE LOSS

With respect to fire damage to the plaintiff's home, the policy in question provided for payment as follows:

3. *Loss Settlement.* Covered property losses are settled as follows: ...

c. Buildings under Coverage A at replacement cost at the time of loss with-

out deduction for depreciation, subject to the following:

(1) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smaller of the following amounts:

(a) the limit of liability under this policy applying to the building;

(b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

(c) the amount actually and necessarily spent to repair or replace the damaged building.

(2) We will pay the cash value of the damage, up to the policy limit, until actual repair or replacement is completed.

(3) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

Under Coverage A of the policy, the defendant's liability for loss to the plaintiff's home was limited to $61,400.00. The plaintiff has not begun to repair or replace her home. Thus, the question presented here is the amount due under the policy where the insured elects not to repair or replace the insured property.

The defendant adjusted the plaintiff's claim by estimating the cost of rebuilding at $50,467.45, and then deducting "depreciation" in various percentages totaling $9,216.27, thereby arriving at the sum of $41,251.18. This sum has been offered to the plaintiff.

The estimated cost of rebuilding did not include amounts for contractor overhead, contractor profit, permits or "clean up". The various exhibits submitted with the pleadings would tend to indicate that the cost to rebuild the plaintiff's home would be at least $62,000.00, if the assumption is made that rebuilding cannot be accomplished without clean up and obtaining the necessary permits, and further that a con-

tractor is unlikely to agree to rebuild any structure without receiving payment for his overhead and a reasonable profit. The sum is in excess of the coverage limit of $61,400.00 on the plaintiff's dwelling, but is somewhat less than the plaintiff's total coverage of $64,470.00 if the additional 5 per cent debris removal coverage is added.

In its motion for summary judgment, the defendant contends that it has properly adjusted the plaintiff's claims under the policy, while the plaintiff contends that the defendant's methods of adjustment are contrary to the policy's provisions regarding loss settlement.

In examining the policy, its terms must be given their plain meanings. *Pierce v. West American Insurance Company*, Ky. App., 655 S.W.2d 34 (1983). Construction is unnecessary in the absence of ambiguities. *National Surgery Corporation v. Dotson*, 270 F.2d 460 (6th Cir.1959).

The policy clearly promises payment for the cost of replacement at the time of loss, without deduction for depreciation. This overall promise, however, is subject to some limitations. Among those are that the defendant will not pay beyond the limit of its coverage nor will it pay more than the amount actually and necessarily spent to repair or replace the damaged building.

More pertinent, however, is the limitation that, until actual repair or replacement is completed, the defendant will pay, up to the policy limit, the "actual cash value of the damage".

Furthermore, the insured may opt to disregard replacement cost loss settlement and voluntarily make claim under the policy on an "actual cash value basis", retaining the right to claim additional sums on a replacement cost basis within 180 days after the loss.

The plaintiff, contending that the policy is ambiguous, requests this Court to construe coverage in her favor for the full cost of replacement of her home, up to the policy limits, regardless of the fact that the plaintiff has neither repaired nor replaced her home nor evidenced any intention to do so.

■ The policy in question is not ambiguous with respect to the insurer's obligation to pay replacement cost. Actual replacement, and the incurrence of costs in that endeavor, is clearly a condition precedent to such a claim.

Although no party has cited the case, the Supreme Court of Alabama has construed a policy with language very similar to that in question here. In holding that replacement is a condition precedent to a claim for replacement costs under the policy, the Court noted that to hold otherwise would render the actual cash value language of the insurance policy meaningless. *Huggins v. The Hanover Insurance Company*, Ala., 423 So.2d 147 (1982).

To hold otherwise in this case would necessitate ignoring the plain terms of the policy. It would also be contrary to the obvious provisions of the loss settlement clause taken as a whole, and would result in enlarging the coverage of the policy beyond its natural and obvious meaning. *Pierce v. West American Insurance Company*, supra.

Accordingly, the plaintiff's motion for summary judgment will be denied. The plaintiff is not entitled to claim replacement cost under the circumstances presented here, where she has not repaired or replaced nor even evidenced an intention to do so.

What then may the plaintiff claim under this policy?

■ Paragraph 3c(2) of the loss settlement clause limits the defendant's obligation under the policy to payment of "actual cash value of the damage" up to the policy limit, until completion of repairs or replacement. Since there is no factual dispute that repairs or replacement have not even begun, much less been completed, the insurer's obligation under that paragraph is succinctly stated.

■ Paragraph 3c(3) provides the insured with the option to disregard replacement cost loss settlement provisions and allows the insured to make claim under the policy for loss on an "actual cash value basis" while preserving the insured's ability to make later claim within a specified period of time for any additional liability on a replacement cost basis. The plaintiff, in her brief, correctly points out the obvious application of that paragraph in the situation where the insured elects to replace the insured dwelling with a dwelling which is smaller and therefore cheaper than the replacement coverage on the insured dwelling. Since it is the dwelling shown in the declarations which is insured, the insurer may not reap a benefit by only paying for replacement of the insured dwelling with a significantly less expensive building. Such was the holding in another case, not cited by either party, which construed a policy very similar to that in issue in this case and issued by the same defendant as in this case. *State Farm Fire and Casualty Company, Inc. v. Ponder*, Ala., 469 So.2d 1262 (1985).

In that case, the Court read subparagraphs 2 and 3 together as indicating a clear choice available to the insured: rebuild the house, or claim actual cash value. The Court observed that replacement cost is a relatively new addition to homeowner's policies, affording the insured coverage in excess of the actual cash value of the insured dwelling, limited only by the policy limits, if the insured elects to rebuild.

In this case, the insured has not made a written election to disregard replacement cost loss settlement, and in fact has claimed such coverage in this action. However, regardless of that fact, the loss settlement provisions taken as a whole, and subparagraphs 2 and 3 in particular, clearly demonstrate that the insured's entitlement under the circumstances presented in this case, in which no repair or replacement has been made or attempted, is clearly limited to actual cash value of the damage, up to the policy limit.

To the extent that the defendant's motion for summary judgment so urges, it will be granted.

The more difficult question is then presented as to whether or not the insured has been paid or offered the amount due under her policy.

The Court in *Ponder,* supra, pointed out that ordinarily the actual cash value will be less than replacement cost. The replacement cost provision is an additional coverage which, on a theoretical basis, provides the insured with an option to replace the building, without deduction for depreciation, rather than to simply receive payment for the actual cash value of the damage sustained by the insured building. However, there is no question that the actual cash value claimed may certainly approach or equal the limit of coverage under the policy by itself.

The term "actual cash value" is not defined in the policy. Kentucky courts have held that it may be defined as the price something will bring on the open market when neither buyer or seller is acting under compulsion. *State Auto Mutual Insurance Company v. Cox,* 309 Ky. 480, 218 S.W.2d 46 (1949). With respect to a building, Kentucky courts have long held that actual cash value is determined "as is", considering its condition at the time of loss. *Aetna Insurance Company v. Johnson,* 74 Ky. (11 Bush) 587 (1874). Kentucky courts recognize the broad evidence rule in determining the actual cash value of buildings for insurance purposes. *American States Insurance Company v. Mo–Lex, Inc.,* Ky., 427 S.W.2d 236 (1968).

In this case, the insurer began with a replacement estimate of $63,023.55. It then deducted $2,000.00 for clean up, $5,153.05 for contractor's profit, a similar amount for contractor's overhead, $250.00 for permits, and $9,216.27 for depreciation, thus arriving at the actual cash value of the loss at $41,251.18.

█ Arriving at the actual cash value of damage by subtracting depreciation from full replacement cost is certainly logical, since it values the damage with consideration for the condition of the building prior to the loss. Such method was recognized in *Huggins v. Hanover Insurance Company,* supra. Kentucky courts have long recognized that the application of depreciation is proper in ascertaining the value of the insured property at the time of loss in its then-existing condition. *Commercial Un-*

*ion Assurance Company v. Howard,* 256 Ky. 363, 76 S.W.2d 246 (1934); *American States Insurance Company v. Mo–Lex, Inc.,* supra. Thus, it was not error for the defendant to deduct depreciation from the cost of repair or replacement of specific items of the plaintiff's building in order to arrive at the actual cash value of the damage incurred in the loss. Similarly, since the goal is to arrive at the actual cash value of the damage, non-damage factors which are applicable only in the instance of repair or replacement such as clean up, profit, overhead, and permits, were properly deducted. These factors have no relation to the value of the damage but only the expense which would be incurred if repair or replacement were involved. Since clean up is covered separately, and coverage for it has been acknowledged, it is not an issue in this litigation.

Thus, while it may be said that the method of adjustment utilized by the defendant is not improper and, indeed, is consonant with Kentucky law, it may also be said that *American States v. Mo–Lex,* supra, makes clear that there is no exclusive method for determining actual cash value of damage to buildings.

█ However, although there is no error in the defendant's method of adjustment, there is dispute with respect to the numbers. Specifically, the plaintiff questions the starting point which the defendant utilized of $63,023.55. This purported gross cost of replacement is evidently challenged by several estimates attached by the plaintiff as exhibits to her motion and response. Additionally, the plaintiff appears to challenge the amounts of depreciation applied to the specific repair items.

The defendant's motion was not accompanied by any affidavits concerning the figures which it utilized. Similarly, the plaintiff's motion was not accompanied by any affidavits as to the figures she wishes to rely upon in challenging the defendant's figures. Thus, there appears to be a dispute of material fact precluding summary judgment as to the amount actually due the plaintiff for the actual cash value of the damage to her dwelling.

## II. PERSONAL PROPERTY LOSS

The plaintiff's policy provides coverage to her for accidental direct physical loss to personal property with a coverage limitation of $33,770.00. She has been paid this sum by the defendant. The plaintiff alleges that she has sustained additional accidental direct physical loss to her personal property which caused her to have to replace such property. She maintains that the additional expense of replacing her damaged personal property, over and above the aforementioned policy limit, should be covered under the additional living expense coverage of her policy, which provides as follows:

COVERAGE C—LOSS OF USE

1. Additional Living Expense. If a covered loss makes the residence premises uninhabitable, we cover the necessary increase in cost to maintain your standard of living. Payment is for the shortest time required to repair or replace the premises but not to exceed 12 months. However, if you permanently relocate, payment is for the shortest time required for your household to settle elsewhere but not to exceed 12 months. This period of time is not limited by expiration of this policy.

The plaintiff theorizes that replacement of her damaged personal property in excess of the personal property coverage was necessary in order to maintain the plaintiff's standard of living, and that such excess loss to the plaintiff should therefore be covered under the additional living expense coverage.

The Court has not been cited any case by the parties construing the additional living expense coverage in the manner suggested by the plaintiff. The Court is convinced that the policy language is clear and unambiguous, and thus not in need of interpretation or construction. To hold that personal property losses in excess of the personal property coverage are insured under the additional living expense provision of the policy if the insured's standard of living maintenance requires the replacement of such property would be contrary to the obvious and direct provisions of the insurance policy and would clearly result in enlarging the coverage of the policy beyond its natural and obvious meaning. This the Court is not authorized to do. *Pierce v. West American Insurance Company,* supra.

The defendant's motion for summary judgment in regard to this claim will be granted.

A separate order will be entered in conformity herewith.