RENDERED: DECEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1433-MR

CHRISTODULOS STAVENS; BADR
IDBEIS; CARDIOVASCULAR
HOSPITALS OF AMERICA; ELI R.
HALLAL; AND PAUL NEWSOM[1]                                          APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE A. C. MCKAY CHAUVIN, JUDGE
                       ACTION NO. 11-CI-001048


FEDERAL INSURANCE COMPANY                                            APPELLEE


                                    OPINION
                                    AFFIRMING

                              ** ** ** ** **

BEFORE:  COMBS, DIXON, AND TAYLOR, JUDGES.

COMBS, JUDGE:  Christodulos Stavens, Eli R. Hallal, Badr Idbeis, and

Cardiovascular Hospitals of America, LLC (CHA), appeal the summary judgment

of the Jefferson Circuit Court entered in favor of Federal Insurance Company

---

[1] Paul Newsom is listed as an appellant on the notice of appeal, and we have listed him in the caption of this case for that reason. However, he has not participated in the appeal.

(Federal Insurance). The circuit court concluded that the terms of an insurance policy issued by Federal Insurance were unambiguous and excluded coverage for the claims asserted against Stavens, Hallal, Idbeis, and CHA (referred to collectively as "the insureds") by Abdul Buridi, a Louisville physician. After our review, we affirm the circuit court's judgment.

Buridi's claims against the insureds relate to his investment in Kentuckiana Medical Center, LLC, a physician-owned facility developed and located in Clarksville, Indiana. Kentuckiana Medical Center (the Hospital) was formed by two members: CHA and Kentuckiana Investors, LLC (KI).

CHA, a Delaware limited liability company, was headquartered in Kansas. Badr Idbeis, a Kansas physician, held a majority of the voting shares of CHA and managed the company. CHA maintained a controlling interest in the Hospital, and Idbeis served on the Hospital's board of managers. CHA also developed or owned and managed other medical facilities.

KI, a Delaware limited liability company, was organized by more than thirty (30) physician investors. Among its members were Stavens, a Louisville cardiologist, and Hallal, an internist from New Albany, Indiana -- who together owned nearly 27% of KI. After the other physician investors, KI held the remaining minority interest in the Hospital. Stavens and Hallal were managing members of KI and would eventually become managing members of the Hospital.

Dr. Buridi, a nephrologist practicing in Louisville, also had patients in the southern Indiana area. In 2007, Buridi purchased a single share of KI representing a 1.0417% ownership in the company.

The Hospital's construction loan proceeds and working capital were exhausted before the project was completed. In order to obtain additional funding, the physician investors of KI agreed to guarantee *personally* various loans and other financial obligations of the Hospital to lenders and equipment providers. The executed guarantees provided for *joint and several* liability. In addition, many of the physician investors loaned cash to KI. Buridi loaned KI and/or the Hospital $25,000 for which he received a promissory note signed by Stavens and Hallal. Even with significant infusions of cash and loans by Stavens, Hallal, and others, the Hospital struggled but finally opened to patients in August of 2009.

Pursuant to the CHA business model developed by Idbeis and used to solicit prospective investors in the Hospital project, KI's physician investors were expected to have staff privileges at the Hospital. Buridi applied for and was granted privileges to admit patients and to provide clinical care at the Hospital. Buridi attended to patients there. The majority of the Hospital's investors were practicing physicians with staff privileges at the Hospital.

For numerous reasons, the Hospital continued to be plagued by financial difficulties. Pursuant to their personal guarantees, Buridi and other

investors were eventually pursued by the Hospital's creditors. In September 2010, the Hospital initiated Chapter 11 bankruptcy proceedings.

In February 2011, Buridi, in his individual capacity, filed an action in Jefferson Circuit Court against CHA, Stavens, Hallal, and Idbeis. Along with claims for conversion and unjust enrichment, Buridi alleged that Stavens and Hallal engaged in fraudulent misrepresentation and breached their fiduciary duties to him in the development and management of the Hospital. He also sought to recover on the promissory note executed by Stavens and Hallal in connection with his loan of $25,000 to KI. In 2012, Buridi amended his complaint to assert derivative claims on behalf of KI.

Stavens, Hallal, Newsom, and Idbeis were insured under a policy issued by Federal Insurance to CHA, which extended to the Hospital's directors and officers by virtue of the Hospital's status as CHA's subsidiary. The insureds timely notified Federal Insurance of the action against them. However, Federal Insurance promptly denied coverage and declined to indemnify its insureds for the litigation costs incurred as a result of defending the action against them. Federal Insurance contended that coverage was excluded under both the contractual liability provision of the policy and the "insured versus insured" provision of the policy. The insureds argued that the exclusions were inapplicable and/or unenforceable.

In June 2012, Stavens, Hallal, Idbeis, and CHA filed a third-party complaint against Willis of Greater Kansas, Inc. (Willis), an insurance broker; Chubb & Son, Inc. (Chubb), a group of insurance companies of which Federal Insurance was a subsidiary; and Federal Insurance. Against Federal Insurance and Chubb, the insureds asserted claims for breach of contract, bad faith, and unfair claims practices. They also sought a declaratory judgment with respect to the issue of coverage under the policy provisions. Against Willis, the insureds asserted claims for misrepresentation, negligence, breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing. In May 2012, the circuit court bifurcated the litigation related to the third-party action against Federal Insurance and the underlying proceedings related to Buridi's complaint against the insureds.

On April 24, 2013, Stavens, Hallal, Idbeis, and CHA filed a motion for partial summary judgment in the third-party action. Federal Insurance filed a competing motion for summary judgment on May 31, 2013. In its opinion and order entered on April 13, 2015, the Jefferson Circuit Court concluded that the terms of the policy were not ambiguous. It determined that as a member of the Hospital's staff, Buridi also qualified as an insured under the terms of the policy and that the policy provision excluding coverage for "insured versus insured" actions was applicable and enforceable. The court denied the insureds' motion for

partial summary judgment and concluded that Federal Insurance was entitled to judgment as a matter of law.

Buridi's claims against CHA and Idbeis in the underlying action were dismissed for lack of personal jurisdiction. The action against them was refiled in U.S. District Court in Kansas. In the Kansas action, the parties agreed that Kentucky's substantive law governed the dispute because Kentucky was the location of the alleged torts as well as the *locus* where Buridi allegedly suffered injury. Applying Kentucky law, the federal court in Kansas ultimately granted summary judgment to CHA and Idbeis. *Buridi v. Idbeis*, No. 15-CV-1142-EFM, 2016 WL 6905899 (D. Kan. Nov. 22, 2016).

Buridi's claims against the insureds proceeded to trial in Jefferson Circuit Court. The jury found that Stavens and Hallal had fraudulently represented to Buridi: (1) that the guarantees he signed would render him liable for the loans and leases on a *pro rata* basis rather than on a joint and several basis; (2) that Stavens and Hallal had converted to their own use $225,000 that belonged to KI; and (3) that KI had no contractual or equitable obligation to repay Stavens and Hallal for their capital investments. The jury also found that Stavens and Hallal were obligated, individually, to repay the promissory note to Buridi in the amount of $25,000. A final judgment was entered reflecting the jury's findings. Buridi

was also awarded attorney's fees and prejudgment interest on the derivative claim and on the promissory note.

The interlocutory summary judgment order entered on April 13, 2015, was made final and appealable pursuant to the provisions of CR[2] 54.02 on September 6, 2019. This appeal followed.

On appeal, the insureds argue that the Jefferson Circuit Court erred by applying Kentucky law to decide that Federal Insurance was entitled to summary judgment. They contend that Indiana law governs the dispute and that the policy's ambiguous terms purporting to exclude coverage, coupled with facts and circumstances that create a reasonable expectation of coverage, mean that the policy must be interpreted to provide them coverage.

Federal Insurance argues that there is no conflict in the substantive law governing the narrow issue presented on appeal, *i.e.*, whether the terms of its insurance contract are ambiguous. It contends that the circuit court correctly determined that Kentucky law governing construction of policy exclusions applied and that summary judgment was appropriate because the terms of its policy are unambiguous.

Because the standard that governs an award of summary judgment is based on the Federal Rules of Civil Procedure, Kentucky, Indiana, and Kansas

---

[2] Kentucky Rules of Civil Procedure.

-7-

agree that summary judgment is proper where there exists no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56; CR 56; Indiana Trial Rule 56; Kansas Statutes Annotated 60-256. Procedural matters such as summary judgment standards are governed by the law of the forum. *Ley v. Simmons*, 249 S.W.2d 808, 808 (Ky. 1952).

The substantive law of Indiana and Kansas are in accord with Kentucky that "the construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court[.]" *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citing *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000)); *see also Erie Indemnity Co. v. Harris*, 99 N.E.3d 625, 629 (Ind. 2018) ("Matters involving disputed insurance policy terms present legal questions and are particularly apt for summary judgment."); *Ponds ex rel. Poole v. Hertz Corp.*, 158 P.3d 369, 370 (Kan. Ct. App. 2007) ("Whether a contract is ambiguous is a matter of law[.]").

Federal Insurance issued a Healthcare Portfolio Insurance Policy to CHA. The parties agree that the policy expressly excludes from coverage claims brought by insureds against other insureds. The policy's exclusion provides, in pertinent part:

8. The Company shall not be liable under Insuring Clauses 1, 2 or 3 for **Loss** on account of any **Claim**:

>  (a)    brought or maintained by, at the behest of, on behalf of, or in the name or right of any **Insured** in any capacity. . . .

"Insured Person" is defined by the terms of the policy as

>  (a)    a duly elected or appointed director, officer, trustee, trustee emeritus, **Manager**, department head, executive director, duly constituted committee member, member of the staff or faculty, or the in-house general counsel of any **Organization** chartered in the United States of America. . . .

(Emphasis original). The parties agree that the policy defines "Insured Person" to include, among others, a member of the staff of CHA or one of its subsidiaries. The Hospital is a subsidiary of CHA.

The question on appeal is whether Buridi qualified as a "member of the staff or faculty" of the Hospital. While the insureds concede that Buridi was granted and exercised staff privileges at the Hospital, they argue that Buridi was not really a member of the Hospital *staff*. They contend that the term is not specifically defined. They argue that it is susceptible of multiple, reasonable interpretations and that it is, therefore, ambiguous. Federal Insurance contends that the term *staff* is a simple, ordinary word that is not rendered ambiguous in this context by a failure to define it specifically.

-9-

In Kentucky, the terms of an insurance policy have no technical meaning in law and are to be interpreted according to general usage. *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205 (Ky. 1986). This rule is equally applicable to policy exclusions. *York v. Kentucky Farm Bureau Mut. Ins. Co.*, 156 S.W.3d 291 (Ky. 2005). Indiana courts also afford "clear and unambiguous policy language given its ordinary meaning." *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013). And, similarly, where an "exclusion is unambiguous[,] it should be given its plain and ordinary meaning." *Wright v. Am. States Ins. Co.*, 765 N.E.2d 690, 694 (Ind. Ct. App. 2002). Kansas courts, too, hold that where policy exclusions are defined in clear and explicit terms, they must be given their plain, ordinary meaning. *Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co.*, 925 P.2d 452 (1996). Furthermore, the law of each state cautions that ambiguity does not arise from the litigants' mere disagreement over the meaning of a policy term.

Parties to an insurance contract may not create an ambiguity simply by asserting an interpretation different from one asserted by an opposing party. *Erie Indemnity Co.*, 99 N.E.3d 625. "Courts should not strain to create an ambiguity where, in common sense, there is not one." *Geer v. Eby*, 432 P.3d 1001, 1009 (Kan. 2019) (citing *American Family Mut. Ins. Co. v. Wilkins*, 179 P.3d 1104 (2008)). Courts must not remake contracts for parties by creating ambiguity where

-10-

none exists. *O.P. Link Handle Co. v. Wright*, 429 S.W.2d 842 (Ky. 1968). The mere fact that a litigant "attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity." *Sutton v. Shelter Mut. Ins. Co.*, 971 S.W.2d 807, 808 (Ky. App. 1997).

Policy provisions are ambiguous only where they are "susceptible to more than one **reasonable** interpretation." *Erie Indemnity Co.*, 99 N.E.3d at 630 (citing *Holiday Hosp. Franchising*, 983 N.E.2d at 578). The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. *American Family Mut. Ins. Co. v. Wilkins*, 179 P.3d 1104 (Kan. 2008). "[C]ourts should not make a different insurance contract for the parties by enlarging the risk contrary to the natural and obvious meaning of the existing contract." *Pierce v. West American Insurance Co.*, 655 S.W.2d 34, 36 (Ky. App. 1983).

Again, the insureds argue that the failure of the policy to include a definition of the term *staff* renders the term ambiguous. They claim that no plain, ordinary meaning of the word *staff* applies to Buridi. We disagree with both assertions.

Because the term *staff* is not defined in Federal Insurance's policy, it has no exclusive, special meaning within its provisions. The term is commonly

-11-

used, and it has plain meaning. It is easily understood and patently unambiguous. The 1993 Edition of *The Oxford English Dictionary* defines *staff* broadly to include "those in authority within an organization." *Legal Thesaurus*, Burton, William C. (2d edition 1992), provides the term "professional force" as an alternative to *staff*. Similarly, the insureds, themselves, propose that the term can refer to "personnel who assist a director in carrying out an assigned task."

Buridi applied for and was granted staff privileges at the Hospital. Thus, along with other medical staff, he was authorized to care for patients within the facility. And although he was not a hospital employee, as a member of the Hospital's staff, he was given access to its resources -- including facilities, equipment, and personnel. Buridi assumed a level of authority there, and he was integral to the Hospital's mission of providing patient care. Based on this analysis, failing to include Buridi as among Hospital "staff" requires us to ignore the "natural and obvious" meaning of the term. In light of its common usage and the understanding of an average person, the circuit court did not err by concluding that the disputed policy provision was unambiguous. Because we conclude that the "insured versus insured" exclusion clearly bars coverage of the claims asserted by Buridi, we need not analyze whether the claims also fall within the policy's contractual liability exclusion.

In the alternative, the insureds contend that coverage must be extended because they reasonably expected that the policy would provide liability coverage for any shareholder derivative action asserted against them. They explain that "the claims brought by Buridi are precisely those contemplated by virtually any corporate purchase of a D & O policy" and imply that if coverage is denied under these circumstances, the coverage is merely illusory. We disagree.

Contrary to the insureds' suggestion, the "insured versus insured" exclusion does not render the coverage illusory. Shareholder derivative actions can commonly be brought by stakeholders who are **not insureds** under their company's coverage policy. The insureds acknowledge in their brief that the Hospital's stakeholders were not exclusively physicians with staff privileges. Therefore, there were shareholders who were not insureds under the policy. Moreover, Idbeis specifically denied in his deposition that his purpose in securing coverage under the Federal Insurance policy was related solely to the risk of shareholder derivative actions.

Finally, the insureds argue that Federal Insurance should be estopped from denying coverage regardless of what the policy actually covers not only because they reasonably expected the policy to cover shareholder actions -- but also because they specifically bargained for such coverage. Federal Insurance

argues that there is no basis upon which it can be estopped from relying on the unambiguous provisions of its insurance contract.

The insureds concede that Indiana adheres to the general rule that the doctrine of estoppel is not available to create or extend the scope of coverage of an insurance contract. *Transcontinental Ins. Co. v. J.L. Manta, Inc.*, 714 N.E.2d 1277 (Ind. Ct. App. 1999). However, they rely upon an exception whereby an insurer can be estopped from denying coverage: and that is where an insurer misrepresents the extent of coverage to an insured in order to induce the insured to purchase coverage which does not actually cover the disputed risk. *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015 (Ind. Ct. App. 1999).

The insureds argue that the insurance broker, Willis, expressly represented to them that they would be covered against shareholder actions. They contend that under Indiana law, an insurance broker is an agent of the company from which he secures insurance and that as an agent of Federal Insurance, Willis's actions, knowledge, and conduct are attributable to Federal Insurance. Because Willis and Federal Insurance were aware of their business model, they argue that the broker and insurer must have been aware of the nature of their coverage needs.

In Indiana, an insurance agent's duty to procure insurance is distinct from his duty to advise his client about the adequacy of coverage or any alternative coverage. *Indiana Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc.*, 27

-14-

N.E.3d 260 (Ind. 2015).  A breach of the duty to advise creates an action in tort. *Id.* (citing *Am. Family Mut. Ins. Co. v. Dye*, 634 N.E.2d 844 (Ind. Ct. App. 1994)).

An insurer can certainly be liable for the tortious conduct of its agent. However, under Indiana law, an "insurance broker" is generally an agent of the insured, and not the insurer.  *Estate of Mintz v. Connecticut General Life Ins. Co.*, 905 N.E.2d 994 (Ind. 2009) (citing *Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350 (Ind. Ct. App. 1995)).  A broker represents the insured by negotiating a contract of insurance.  *Id.*  An insurer is not liable for a broker's tortious conduct.

The parties do not dispute that Willis, a sophisticated broker, agreed to procure insurance on CHA's behalf.  Consequently, Willis acted as CHA's broker, and CHA was under a duty to use reasonable care to procure the insurance coverage requested.  Willis was not acting as an agent of Federal Insurance. Therefore, Federal Insurance is not liable for the allegedly tortious failure of Willis to secure adequate coverage.  Federal Insurance did not induce CHA to purchase coverage for the Hospital's managers.  It did not make any misrepresentations or mislead the insureds with respect to the scope of coverage provided by the policy, and the representations made by Willis to CHA cannot be imputed to Federal Insurance.  Whether Willis had a duty to advise its client about the adequacy of the management liability coverage offered by Federal Insurance (given the ownership structure of the Hospital or any alternative coverage) is not an issue before us.

The Jefferson Circuit Court did not err by applying the law of the forum state as there are no significant differences in the relevant laws of Kentucky, Indiana, and Kansas. Nor did it err by concluding: (1) that Buridi's claims were excluded from coverage under the unambiguous provisions of the Federal Insurance policy and (2) that the policy was binding -- as written -- upon the insureds. The action against the insureds did not fall within the risks covered by Federal Insurance. Consequently, Federal Insurance was entitled to judgment as a matter of law.

We AFFIRM the summary judgment entered by the Jefferson Circuit Court in this matter.

DIXON, JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANTS:

Theodore W. Walton
Louisville, Kentucky

BRIEF FOR APPELLEE:

Gary Gassman
Janet R. Davis
Chicago, Illinois

Charles H. Cassis
Aida Almasalkhi
Prospect, Kentucky