COMPREHENSIVE HOME HEALTH SERVICES, INC., d/b/a Family Home Health Care S.E., Appellant

v.

PROFESSIONAL HOME HEALTH CARE AGENCY, INC.; Whitley County Health Department, d/b/a Whitley County Home Health; and, Commonwealth of Kentucky, Cabinet for Family and Health Services, Appellees.

No. 2012–SC–000090–DG.

Supreme Court of Kentucky.

Oct. 24, 2013.

Marian J. Hayden, Frankfort, Holly Turner Curry, Lexington, for Appellant.

Carole Douglas Christian, Louisville, for Appellees, Professional Home Health Care Agency, Inc., and Whitley County Health Department, d/b/a Whitley County Home Health.

Ann T. Hunsaker, Frankfort, for Appellee, Commonwealth of Kentucky, Cabinet for Family and Health Services.

Opinion of the Court By Justice ABRAMSON.

Professional Home Health Care Agency ("Professional") and the Whitley County Health Department (collectively "the Ex- isting Providers") requested a hearing to oppose an application for a Certificate of Need ("CON") filed by Comprehensive Home Health Services, d/b/a Family Home Health Care S.E. ("Family Home Health"). The hearing officer disallowed certain evidence offered by the Existing Providers, and, on their appeal following approval of the CON, the Franklin Circuit Court concluded that that particular evidentiary ruling had denied the Existing Providers due process. Because the circuit court's final order would have limited the evidence on remand to an outdated State Health Plan, the Existing Providers appealed to the Court of Appeals. The appellate court concluded that the current State Health Plan, not the one in place years earlier at the time of the original hearing, must guide the decision on remand. After careful review, we agree and, accordingly, affirm.

## RELEVANT FACTS

The Cabinet for Health and Family Services ("the Cabinet") is the administrative agency authorized to license health facilities and services in the Commonwealth. Kentucky Revised Statute ("KRS") 216B.010. Home health care providers fall under the Cabinet's licensure authority, and thus before a home health care provider can expand its existing services into a contiguous county, it must obtain approval from the Cabinet in the form of a CON. KRS 216B.015(8). The Cabinet is vested with broad statutory authority to promulgate administrative regulations concerning the CON process, including application and review procedures. KRS 216B.040(2)(a)1. The General Assembly has identified six statutory criteria that apply to the issuance and denial of CONs.[1] KRS

---

**1.** Those criteria are (1) consistency with the State Health Plan; (2) need and accessibility; (3) interrelationships and linkages; (4) costs, economic feasibility, and resources availabili-

216B.040(2)(a)2. Consistency with the State Health Plan ("SHP") is the first of the criteria, and an applicant must establish consistency with the SHP in order for a CON to be approved. KRS 216B.040(2)(a)2.a.

The SHP is an official document prepared by the Cabinet that contains statistical data reflecting various population metrics as they relate to health care services. The purpose of the SHP is to "set forth the review criteria that shall be used when reviewing applications for certificates of need for consistency with plans pursuant to KRS 216B.040." SHP at iii. Pertinent to this case is the SHP's home health "net need" calculation, which demonstrates how many additional patients are presumed to need home health services in the county proposed to be served by the applicant. To arrive at the net need figure, the Cabinet enters population estimates, predictions of future population growth, and recent home health utilization data into the formula provided by the SHP. The SHP also contains a threshold of unmet need for home health services to which the net need figure can be compared. If an applicant's CON is inconsistent with the current SHP figures, it must be denied as a matter of law. KRS 216B.040(2)(a)2.a. Therefore, under KRS 216B.040 and its companion regulation, 900 KAR 6:050,[2] if a CON applicant desires to expand its services into a county that has a negative net need or a net need lower than the applicable SHP threshold, the applicant's CON will be rejected without consideration of the other statutory requirements.

In June of 2006, Family Home Health filed a CON application with the Cabinet to expand its home health services into adjacent Whitley County. The Existing Providers, which were already operating in the county, requested a hearing to challenge Family Home Health's CON application. The Cabinet scheduled a hearing for October 25, 2006.

On October 2, 2006, the Cabinet released its calculation under the SHP which showed that Whitley County had a net need of "–189," demonstrating a "negative need" for home health services. At that time, a net need of "+125" was the threshold for a CON for a provider seeking to expand home health services. Family Home Health challenged the October 2nd calculations, arguing that Professional had inaccurately reported its numbers to the Cabinet. One week later, a new SHP calculation showed a "–20" need in Whitley County, still well below the "+125" threshold. On October 16, the filing deadline for exhibits and witness lists for the upcoming hearing, the Cabinet published yet another SHP calculation—this one revealing a need for additional services for 184 patients in Whitley County. Two days later, the Existing Providers moved the hearing officer for a continuance to develop additional evidence in light of the just-released SHP calculation, which obviously varied dramatically from the calculations released in the preceding two weeks. That motion was denied and the hearing commenced as scheduled on October 25. At the hearing, the hearing officer refused to allow the Existing Providers to present evidence concerning the new October 16 SHP calculation because that evidence had not been filed by the aforementioned Octo-

---

ty; and (5) quality of services. The sixth criterion, pertaining to long-term care beds, is not relevant to this particular CON dispute.

**2.** 900 KAR 6:050, in effect at the time of the hearing in this case, is now 900 KAR 6:070.

The renumbering did not substantially change the language of the regulation. We will refer to the former numbering of the regulation in this Opinion.

ber 16 prehearing deadline. The hearing officer issued findings of fact, conclusions of law, and a final order approving Family Home Health's CON on November 15. The Existing Providers filed a request for reconsideration, which was denied by the hearing officer. The Cabinet granted Family Home Health's CON.

The Existing Providers appealed the Cabinet's decision to the Franklin Circuit Court, where they argued that the hearing officer erred when she refused to allow them to present any evidence concerning the new October 16 SHP calculation. The trial court agreed and reversed, finding the Existing Providers were denied due process when they were prevented from introducing evidence to "fully [address] the new, dramatically changed circumstances" simply because that evidence was not produced by the October 16 filing deadline for exhibits and witnesses. The trial court opined that despite the hearing officer's adherence to the "letter of the law" governing prehearing procedure, the result was a denial of due process. The Cabinet's decision to grant the CON, given the hearing officer's erroneous exclusion of relevant evidence, was found to be arbitrary, and the matter was remanded.

Thereafter, Family Home Health filed a motion to amend the order, asking the trial court to limit the scope of the remand hearing to the SHP in effect at the time of the October 25, 2006 hearing. The trial court cited the language of 900 KAR 6:050 as supporting Family Home Health's position, as it mandates the use of "the version of the State Health Plan in effect at the time of the cabinet's decision." Interpreting the language of 900 KAR 6:050 as a reference to the Cabinet's 2006 decision, the trial court concluded that the relevant issue on remand was whether Family Home Health was entitled to a CON under "the [SHP] and figures on the date of the original hearing." Thus, the Franklin Circuit Court ruled that the evidence allowed at the remand hearing should be "limited to the scope of the October 25, 2006 hearing."

The Existing Providers appealed the portion of the trial court's order limiting the scope of the remand hearing. They argued that restricting the remand hearing to the October 2006 numbers would directly contradict the statute and administrative regulations governing CON proceedings. The Court of Appeals agreed and concluded that restricting the proof to outdated numbers on remand would "not effectuate justice." The Court of Appeals reasoned that "the language of the applicable regulations . . . requires the use of the latest numbers available at the time of the decision." As a consequence, the Court of Appeals vacated the trial court's amended order limiting the proof on remand, reinstated the original opinion and order, and remanded the matter for a new hearing without any limitations.

On discretionary review, Family Home Health now asserts that its due process rights have been denied by the Court of Appeals' decision to vacate the trial court's amended order, and that such a decision contravenes longstanding Kentucky precedent concerning the purpose and scope of remand. Family Home Health also challenges the appellate court's interpretation of the relevant CON regulations, arguing that those regulations require the use of the 2006 SHP figures on remand.

## ANALYSIS

I. **Allowing Consideration of Changed Circumstances and the Current SHP on Remand is not Contrary to General Principles of Administrative Law and Fulfills the Purpose of the CON Statute.**

For decades, Kentucky courts have recognized that an administrative

agency decision not supported by substantial evidence is arbitrary and cannot be sustained. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Commission,* 379 S.W.2d 450, 456 (Ky.1964). When an administrative body improperly excludes relevant evidence in arriving at its decision, the general purpose of remand is to allow for the introduction of that wrongfully-excluded evidence in order to produce a fully-developed factual basis for an eventual administrative decision. In *Broadway & Fourth Realty Company v. Metcalfe,* 230 Ky. 800, 20 S.W.2d 988, 989 (1929), this Court determined that remand may be required when the facts were not adequately developed in the original administrative proceeding; otherwise "great injustice might be inflicted." The Court followed the *Broadway & Fourth Realty Company* logic a decade later in *Searcy v. Three Point Coal Co.,* 280 Ky. 683, 134 S.W.2d 228 (1939), declaring that a trial court may remand a case for the taking of further proof when an administrative board has "arbitrarily refused to permit evidence to be introduced." The principle was explored further in *Browning Manufacturing Division v. Paulus,* 539 S.W.2d 296, 297 (Ky.1976), when this Court held that a trial court acts within its discretion in remanding a matter to ensure that an issue will be disposed of only when "the facts [are] fully explored" by the administrative body.

These early cases illustrate a clear concern that administrative decisions not be predicated upon incomplete factual records. Family Home Health insists that the general principle followed in these cases means that this matter should be remanded to allow the Existing Providers to develop and introduce the proof they were prevented from using in October 2006. In other words, the hearing should be a replay of the facts and circumstances exactly as they were at that point in time with the addition of the wrongfully-excluded evidence regarding the October 16 need calculation for home health service. However appropriate that might be in a worker's compensation proceeding where the improperly omitted evidence relates to past facts, matters frozen in time if you will, it has absolutely no validity in the CON arena where the whole purpose of the proceedings is to address current need. The SHP is a dynamic document that by law is updated regularly to reflect current facts and the calculations it requires are dynamic as well, changing as the population, utilization rates and other factors change. If the old evidence and now long-outdated October 2006 SHP calculation were to govern the remand proceedings, there would be no accurate and fully developed factual record concerning the validity of Family Health Care's CON application in the here and now, 2013. Indeed, the restriction imposed by the trial court and urged by Family Home Health would require the hearing officer to accept facts that are no longer true. As a matter of general administrative law, any decision on remand premised on outdated information would not be based on substantial evidence and would be inherently arbitrary, necessitating reversal by a reviewing court. *American Beauty Homes,* 379 S.W.2d at 456.

Notably, there are no Kentucky cases that stand for the proposition advanced by Family Home Health, *i.e.,* that the evidence presented in a CON remand hearing must be limited to the SHP in effect at the time of the original hearing. However, the Court of Appeals cited *Whittaker v. Southeastern Greyhound Lines,* 314 Ky. 131, 234 S.W.2d 174 (Ky.1950) and *Williams v. Cumberland Valley National Bank,* 569 S.W.2d 711 (Ky.App.1978), as cases presenting analogous regulatory

schemes and outcomes contrary to Family Home Health's position. In *Whittaker*, a transit operator applied for a certificate of convenience for the operation of a seven-mile bus line. 234 S.W.2d at 175. After the circuit court declared the certificate void, our predecessor Court remanded the matter back to the Division of Motor Vehicles, instructing the Division to consider the additional need for service, new applications for service, and any new proposed schedules servicing the route. *Id.* at 177–78. *Williams v. Cumberland Valley National Bank* involved an application for the approval of a new bank. 569 S.W.2d at 711. In *Williams*, the Court of Appeals ultimately remanded the case to the Commissioner of Banking "for a factual determination of whether there has been a significant change of conditions or circumstances ... to warrant the issuance of a charter." *Id.* at 714.

In both *Whittaker* and *Williams* the reviewing courts considered changed circumstances as a highly relevant inquiry on remand. In particular, the change in demand for a service was crucial in determining whether an application should be granted or denied. The same principle applies here. The CON statute and regulations are directed at assuring citizens "safe, adequate, and efficient medical care" while recognizing that "the proliferation of unnecessary ... health services" results in "costly duplication" of services and "increases the cost of quality health care within the Commonwealth." KRS 216B.010. This important legislative purpose cannot be accomplished if a decision affecting the health care landscape in 2013 is based on 2006 data.

As noted by the Existing Providers, other states have weighed in on the inquiry presented here and have reached similar conclusions. The New Jersey Superior Court held that there is no injustice in applying new regulations to a pending application to establish a cardiac surgery program at a hospital, even if the result is a denial of the application. *Saint Joseph's Hospital and Medical Center v. Finley*, 153 N.J.Super. 214, 379 A.2d 467 (1977); *see also Matter of Anderson v. Blum*, 80 A.D.2d 674, 436 N.Y.S.2d 378 (N.Y.App. Div.1981). The New Jersey court applied this same rationale when it remanded a nursing home application to a hearing officer with directions to consider any intervening changes in need. *Merry Heart Nursing & Convalescent Home Inc. v. Dougherty*, 131 N.J.Super. 412, 330 A.2d 370 (1974).

While foreign authority is not binding on this Court, we find the underlying rationale of these cases consistent with Kentucky law and, most particularly, the legislative intent underlying the CON statute. The New Jersey court declared that, "[t]he Commissioner [of the New Jersey Department of Health] would be derelict in his duty if he did not take into consideration the latest available information in passing on an application for a certificate of need and would be acting contrary to the very intent and purpose of the statute." *Merry Heart Nursing & Convalescent Home Inc.*, 330 A.2d at 373. By allowing the use of outdated SHP figures, the Cabinet (through its hearing officer) would similarly act "contrary to the very intent" of its overarching regulatory purpose of providing "safe, adequate, and efficient medical care" while avoiding "costly duplication and underuse" of healthcare services and facilities. KRS 216B.010. Current SHP figures are calculated to predict imminent demand for health services in a given geographic area, and the Cabinet would contravene the precise purpose of the SHP by using outdated figures when assessing CON applications.

■ Family Home Health couches much of its argument on the contention that a remand order cannot serve to improve one party's position while placing the other party at a disadvantage. *See Getty v. Federal Savings & Loan Ins. Corp.*, 805 F.2d 1050, 1061 (D.C.Cir.1986). According to Family Home Health, allowing the Existing Providers to present the current SHP on remand will result in an immediate motion for summary judgment against Family Home Health for its failure to comply with the threshold SHP consistency requirement, amounting to a denial of due process. We reject this argument for several reasons.

First, and most significantly, Family Home Health has no vested interest in application of the October 2006 SHP. As noted by the Existing Providers, the United States Supreme Court has declared that a litigant's due process rights are determined by the law in effect at the time of the remand hearing. *Western Union Telegraph Co. v. Louisville & Nashville Railroad Co.*, 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437 (1922). The General Assembly is free to amend CON procedure, including directives concerning the application of the SHP. Moreover, the Cabinet may make new net need calculations to address changes in populations and health care services.[3] Giving a litigant the right to the application of a specific prior version of the SHP would invade the province of the legislature, and would stifle the Cabinet's authority, in complete disregard of the directives in KRS Chapter 216B regarding

the issuance or denial of CONs based on current facts.

Second, we cannot indiscriminately accept Family Home Health's prediction that its CON application will be inconsistent with whatever SHP is in effect at the time of the remand hearing. The SHP is prepared triennially and updated at least annually, subject to the approval of the Governor. KRS 216B.015(28). Between the time Family Home Health filed its CON application in June 2006 and the October 2006 hearing, the relevant SHP figures changed three times. Although current numbers reflect a negative need in Whitley County,[4] it would be error to assume that the figures will be unfavorable to Family Home Health when this matter is finally remanded.

Third, we do not agree that Family Home Health will be deprived of a meaningful review, or that its CON application will be automatically subject to summary judgment on remand. Family Home Health successfully challenged the SHP need calculations in 2006, and there is no reason to assume that it will be precluded from the opportunity to challenge the calculations on remand. In fact, Family Home Health will have very obvious grounds to challenge the new calculations, as the current SHP figures for Whitley County are based on the need for additional services after considering the services that the Existing Providers and *Family Home Health* are currently providing. Even if the hearing officer deems the CON application inconsistent with the relevant

---

3. In 2006, the SHP formula calculated a historic county-specific use rate. The formula was changed in 2007, shifting to the application of a state-wide calculation. Under this current revision, the need projection is a function of the volume of services agencies have been providing in a given county compared to the state as a whole, and the predicted population growth in that county.

4. According to the 2013 State Health Plan Calculations for Home Health, dated July 3, 2013, the current net need in Whitley County for home health services is "–227." *http://chfs. ky.gov/ohp/con* (last visited September 24, 2013).

SHP data, 900 KAR 6:065 Section 10 provides that a party may file a request for reconsideration of the Cabinet's decision to grant or deny a CON. The Cabinet would then have the opportunity to reconsider the decision, and, if reconsideration was warranted, Family Home Health would be entitled to a new hearing. 900 KAR 6:065 Section 10(6).

Finally, under KRS 216B.090(2), "[a]n approved certificate of need shall be issued forty (40) days after notice of the cabinet's decision unless a judicial appeal is taken and issuance is enjoined by the court." In this case, the Cabinet issued the CON because, although an appeal was taken, no court ever enjoined the issuance of the CON to Family Home Health. This allowance for issuance of a CON before the judicial review process has been completed is a change from the original CON statute, a change wrought by S.B. 68 passed by the 1990 General Assembly. While it reflects legislative intent to allow an applicant who has received a favorable decision to proceed with implementation of the CON in the absence of an injunction, it does not in any way suggest that judicial review should be skewed in some way by the applicant's decision. The courts must review every administrative decision for compliance with the law and assure particularly the due process rights of all involved. In short, Family Home Health proceeded at its own risk with a CON that had not been finally approved in a final and non-appealable judgment or opinion. Its business decision to do so in no way hampers the courts' obligation to review the matter fully, i.e., that decision gives Family Home Health no due process rights that the courts must defer to in some manner. If we were to conclude otherwise the whole process of judicial review of CON decisions would be undermined.

In sum, the Court of Appeals properly determined that the trial court erred in restricting the evidentiary scope of the remand hearing. By vacating the amended order and removing the limitation on the evidence that may be presented on remand, the Court of Appeals complied with Kentucky law and did not deprive Family Home Health of due process.

## II. The Court of Appeals Properly Interpreted CON Statutes and Regulations to Require Consideration of the Current SHP and Calculations.

Family Home Health further contends that it is entitled to the application of the October 2006 SHP on remand based on what it deems to be the correct interpretation of the language of the governing regulation, 900 KAR 6:050 Section 7. This provision instructs the Cabinet on assessing whether a CON application is consistent with the SHP, pursuant to KRS 216B.040(2)(a)2.a.[5] Section 7(1)(b) provides:

> In determining whether an application is consistent with the State Health Plan, the cabinet shall apply the latest inventories and need analysis figures maintained by the cabinet and the version of the State Health Plan in effect *at the time of the cabinet's decision.*

(emphasis supplied). Family Home Health contends that the SHP itself, specifically its introductory "technical notes," requires the use of the October 2006 calculations. Technical Note 6 of the 2006 SHP stated as follows: "All certificate of need decisions shall be made using that version

---

**5.** If a CON application passes KRS 216B.040(2)(a)1.b. muster, the additional requirements of need, accessibility, interrelationships and linkages, costs, and quality of services are considered by the Cabinet before approving or denying an applicant's CON. *See* 900 KAR 6:050 Section 7(2)-(6).

of the Plan in effect on the date of the decision, regardless of when the letter of intent or application was filed, or public hearing held."

The trial court construed the Section 7(*l*)(b) language as a reference to the SHP in effect at the time of the Cabinet's *original* decision to grant Family Home Health the requested CON. The Court of Appeals, however, reached a different conclusion, understanding "the latest inventories and need analysis" to refer to the SHP in effect at the time of the *forthcoming* decision on remand. Not surprisingly, Family Home Health argues that the Court of Appeal's interpretation is erroneous. Again, we disagree.

 In the interpretation of administrative regulations, we apply the same rules that are applicable to statutory construction and interpretation. *Revenue Cabinet v. Joy Technologies, Inc.*, 838 S.W.2d 406 (Ky.App.1992). As such, we presume that the legislature "did not intend an absurd result" in directing the Cabinet to promulgate regulations assuring consistency with the SHP and that the Cabinet did not intend such a result in issuing those regulations. *Commonwealth, Central State Hosp. v. Gray*, 880 S.W.2d 557, 559 (Ky. 1994). Section 7(*l*)(b) of the pertinent regulation contemplates two factors in determining whether a CON application is consistent with the SHP: 1) "the latest inventories and need analysis figures maintained by the cabinet"; and 2) "the version of the State Health Plan in effect at the time of the cabinet's decision." Certainly, "latest" need analysis figures cannot logically be read to mean outdated

figures. *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky.2002) (holding that a reviewing court "must interpret the statute according to the plain meaning of the act and in accordance with the legislative intent"). As noted, the central concern of CON law is to assess and determine current need in order to avoid costly and unnecessary health care facilities or services.

It is equally illogical to presume that in order to determine if a CON application is consistent with the SHP, the Cabinet must consider the latest need threshold figures in conjunction with outdated net need calculations.[6] Such an interpretation would create a wholly meaningless review process wherein any significant changes to need in a given county would be reflected in one metric—the latest need threshold figures—and not the other—the outdated SHP net need calculations. Simply, one consideration would undermine the other. It follows that as it applies to this case and cases like it, the term "decision" refers to the Cabinet's ultimate decision, which would be the decision on *remand*. This is the only interpretation that preserves the legislative intent that CON decisions be premised on current data.

Other sections of KRS Chapter 216B provide further guidance and support the Court of Appeals' conclusion. CON hearing procedure provisions provide that "[a] full and complete record shall be maintained of the hearing" and "[a]ny *decision* of the cabinet to issue or deny a certificate of need shall be based solely on the record established with regard to the matter."

---

6. The Court of Appeals found that the October 2006 SHP numbers were "incorrect" after considering the unpublished decision in *Family Home Health Care, Inc. v. Saint Joseph Health System, Inc.*, 2009 WL 2408464 (Ky. App.2009). This Court has not been presented with any evidence of the veracity, or lack

thereof, of those numbers, as the crux of the trial court's decision to remand the matter centered on the hearing officer's refusal to hear evidence to that effect. Furthermore, the question of whether the 2006 figures are correct is immaterial to our analysis of the proper scope of the remand hearing.

KRS 216B.085(3)–(4) (emphasis supplied). Accordingly, the Cabinet is bound to consider only the record developed at the hearing in reaching its decision to grant or deny an applicant's CON. In our present case, the trial court remanded the matter to the hearing officer for a *new hearing* where a *new record* will be developed pursuant to KRS 216B.085(3). Under the directive of KRS 216B.085(4), the Cabinet's decision on remand must be based on this new record. Therefore, the term "decision" cannot be construed as referencing the original 2006 decision, which will effectively be replaced by a new decision on remand pursuant to KRS 216B.085.

Furthermore, the SHP and its technical notes must be consistent with the governing statutes and regulations. *Hagan v. Farris,* 807 S.W.2d 488, 490 (Ky.1991). As such, the language of Technical Note 6 must also refer to the decision in effect at the time of the remand hearing. It is worth noting that Technical Note 3 of the 2006 SHP required the use of "the *latest* published version of the Cabinet *Inventory of Kentucky Health Facilities, Health Services, and Major Medical Equipment* and published utilization reports" in reviewing CON applications. (emphasis supplied). The technical notes can reasonably be read as consistent with one another, mandating the use of the most up-to-date figures and inventories, including the latest SHP.

The Cabinet advocates for Family Home Health's position, arguing that this Court must give proper deference to the Cabinet's interpretation of the CON regulations. Although courts are required to give great deference to an administrative agency's interpretation of its own regulations, "that [deference] does not rise to an abdication of the court's responsibility to finally construe the same statute or regulation." *Delta Air Lines, Inc. v. Com., Revenue Cabinet,* 689 S.W.2d 14, 20

(Ky.1985). To that end, we are obliged to adopt a "[c]onstruction that will accomplish the purpose of the law." *King v. Sermonis,* 481 S.W.2d 652, 654 (Ky.1972). Having determined that the Cabinet's interpretation of the pertinent regulation would create an arbitrary process wherein every appealed CON decision could be based on outdated data, we cannot defer to that erroneous interpretation. *See Hagan,* 807 S.W.2d at 490 ("An agency's interpretation of a regulation is valid, however, only if the interpretation complies with the actual language of the regulation.") (internal citations omitted).

Finally, Family Home Health's concern for interminable litigation is unfounded. The current regulatory framework includes filing and notice deadlines concerning CON proceedings, and the Cabinet maintains the authority to amend current deadlines and promulgate new ones. Finality for applicants is statutorily assured under KRS 216B.090(2), which provides that if a party requests reconsideration of the Cabinet's decision, "[t]he decision of the cabinet [after reconsideration] shall be final for purposes of judicial appeal." Petitions for review must be filed with the Franklin Circuit Court within 15 days of the Cabinet's denial of reconsideration. KRS 216B.115(1). Our conclusion—that a remand hearing cannot be limited to facts as they existed in 2006 and the application of outdated SHP figures—will not subject parties to never-ending appeals because a matter will not be remanded routinely but, rather, *only* when a court has found reversible error. *Kentucky Commission on Human Rights v. Fraser,* 625 S.W.2d 852, 856 (Ky.1981) ("The agency's findings are clearly erroneous if arbitrary or unsupported by substantial evidence in the record."). If relevant evidence is properly admitted, the current SHP data are employed and there are no irregularities in

the process, a decision to grant or deny a CON based on substantial evidence will withstand judicial review.

We conclude that the language of Section 7(1)(b), "the version of the State Health Plan in effect at the time of the cabinet's decision," refers to the SHP in effect at the time of the Cabinet's decision on remand. Therefore, we agree with the Court of Appeals that the matter must be remanded without limiting the hearing by requiring application of the SHP as it existed in 2006.

## CONCLUSION

For the reasons explained herein, we affirm the Court of Appeals' decision reversing the Franklin Circuit Court's amended opinion and order and reinstating that court's original opinion and order which remanded this matter to the Cabinet for further proceedings. Such further proceedings shall be consistent with this Opinion.

All sitting. All concur.