NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0510n.06

No. 18-5104

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 15, 2018
DEBORAH S. HUNT, Clerk

SUSAN HICKS, et al.

    Plaintiffs-Appellees,

v.

STATE FARM FIRE & CASUALTY CO.

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. In this interlocutory appeal of a putative insurance class action, State Farm Fire & Casualty Co. challenges the method of calculation for structural damage coverage under its homeowner's insurance policies and Kentucky law. For the following reasons, we affirm the judgment below and hold that State Farm miscalculated "actual cash value" ("ACV") when it depreciated the cost of labor and materials rather than simply materials.

**Factual and Procedural History**

In the underlying complaint, proposed class representatives—Susan Hicks and Don Williams[1] (collectively, "Plaintiffs")—alleged that State Farm miscalculated the ACV of their properties. Plaintiffs both held homeowner's insurance policies with State Farm that provided a two-step loss settlement provision for structural damage claims. Under the policies, State Farm would initially pay the ACV of the insured's damaged property. Then, if the insured chose to

---

[1] Initially Jeffrey Bailey was a named plaintiff, but he voluntarily dismissed his claims. (Doc. 117, Page ID 4495).

repair or replace the damaged property, State Farm would pay any additional cost required to complete such repair or replacement.

**COVERAGE A – DWELLING**
**1. A1 – Replacement Cost Loss Settlement – Similar Construction.**
    a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION 1 – COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:
    (1) *until actual repair or replacement is completed,* we will pay only the *actual cash value* at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;
    (2) *when the repair or replacement is actually completed*, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less[.]

Plaintiffs' residences were both destroyed by fire in 2014. State Farm dispatched insurance adjusters to inspect the damage to the respective properties. In each case, an adjuster prepared a written estimate of the covered losses to the home, including the cost of materials and labor required to complete the repairs. In calculating its ACV payment obligations to Plaintiffs, State Farm took the adjuster's total reconstruction cost estimate for each home—the "replacement" cost—and depreciated both material costs and labor costs.

Plaintiffs initially filed a complaint in state court, which State Farm removed. Plaintiffs claimed that State Farm breached its contract with the insured when it estimated the full repair or replacement cost of the damaged property, including labor and materials, and then depreciated labor costs when calculating ACV payments. State Farm argued that the two-step loss settlement provision is permitted both under State Farm policies and Kentucky law.

In relevant part, the district court (Judge Henry Wilhoit) denied State Farm's motion to dismiss, thereby allowing the case to proceed on the breach of contract claim. *Bailey v. State Farm Fire & Cas. Co.*, No. CIV.A. 14-53-HRW, 2015 WL 1401640, at *6 (E.D. Ky. Mar. 25, 2015). It held that "the purpose of insurance is to indemnify the insured," and under Kentucky law, an insured is entitled to receive "the cash equivalent of the damaged property as it existed immediately prior to the loss." *Id.* Although State Farm could depreciate the materials component of the replacement cost value when calculating ACV, the district court held that "depreciation of labor in calculating ACV is improper" and that "depreciated labor costs would result in **under**indemnification." *Id.* The district court further determined that "to the extent that [State Farm's] contract is unclear with regard to whether labor is subject to depreciation, Kentucky law dictates that the ambiguity be resolved in favor of the insured." *Id.*

Shortly thereafter, in April 2016, this same question arose in another Eastern District of Kentucky case, *Brown v. Travelers Casualty Insurance Co. of America*, No. 15-50, 2016 WL 1644342, at *4-5 (E.D. Ky. Apr. 25, 2016). In *Brown*, Judge Amul Thapar, now a member of this court, grappled with the identical question of how to calculate depreciation when determining ACV. Judge Thapar certified to the Kentucky Supreme Court the question of whether "an insurer, in determining the 'actual cash value' of damaged property under an indemnity insurance policy, [may] depreciate the cost of labor[.]" However, the Kentucky Supreme Court declined the certified question, thereby leaving the question for the district court to decide.

Judge Thapar held that when calculating ACV in Kentucky, an insurer may not "depreciate the value of pure labor that has not merged with a finished good." *Id.* He further held that "replacing a wall—or a ceiling or a floor as the case may be—always requires new labor, even if it does not require new materials." *Id.* Because labor such as the installation of a wall "never truly

merges into the finished product of the wall," Judge Thapar concluded it was "more akin to pure labor." *Id.* Accordingly, the district court denied the insurer's motion for judgment on the pleadings and held that the plaintiffs "stated a plausible claim for breach of contract." *Id.* at *6. The *Brown* case later ended when the plaintiffs agreed to a voluntary dismissal.

Meanwhile, the parties in this case engaged in discovery and completed class certification briefing. State Farm moved, pursuant to 28 U.S.C. § 1292(b), to certify the matter for an interlocutory appeal. The district court certified its earlier ruling—denying the motion to dismiss with respect to the breach of contract claim—for appellate review. We accepted State Farm's § 1292(b) petition and certified the following question: "Whether, under an insurance policy that provides for replacement cost coverage, an insurer may depreciate the cost of labor when it calculates the actual cash value [ACV] of structural loss?"

**Discussion**

On an interlocutory appeal under § 1292(b), we review de novo a district court's denial of a motion to dismiss. *Caruana v. Gen. Motors Corp.*, 204 F. App'x 511, 512 (6th Cir. 2006). In this case, State Farm acknowledges that whether Kentucky permits "labor depreciation" in the calculation of insurance payments is a novel question of law. However, it argues that including full payment for labor would overstate the ACV and "results in an improper windfall to the insured." Plaintiffs respond that the district court did not err and that Kentucky law does not allow an insurer to depreciate labor costs.

I.     **What is ACV?**

Homeowner's insurance policies typically offer two forms of coverage: ACV and replacement cost. *See Couch on Insurance* § 175:26 (3d ed. 2018). Generally speaking, ACV is the dollar amount required to restore a policyholder to where he or she was before the loss. *Id.*

By contrast, "[t]he purpose of replacement cost coverage is 'to remedy the shortfall in coverage which results under a property insurance policy compensating the insured for actual cash value alone.'" *Cincinnati Specialty Underwriters Ins. Co. v. C.F.L.P. 1, LLC*, No. 3:14-cv-40, 2015 WL 5793951, at *2 (W.D. Ky. Sept. 30, 2015) (quoting *Couch on Insurance* § 176:56). A replacement cost coverage policy "entitles the insured to the amount necessary to replace the damaged property, without deduction for deterioration, obsolescence, and similar depreciation of the property's value." *Id.* (internal citations and quotation marks omitted).

For example, if a policyholder owned a house with a ten-year-old roof that was destroyed by hail, the ACV would be the price of providing the policyholder with a ten-year-old roof that was not destroyed by hail. However, it is not feasible to buy a ten-year-old roof (or ten-year-old roofing materials) to install on an existing building. This dilemma has led to various valuation methods for the cost of placing policyholders back in their pre-loss position.

Prior to 1992, under Kentucky law there was "no exclusive method for determining [ACV] of damage to buildings." *Snellen v. State Farm Fire & Cas. Co.*, 675 F. Supp. 1064, 1068 (W.D. Ky. 1987). "Kentucky courts ha[d] long held that [ACV was] determined 'as is,' considering [a building's] condition at the time of loss." *Id.* (citing *Aetna Ins. Co. v. Johnson*, 74 Ky. (11 Bush) 587 (1874)). In 1949, Kentucky's highest court defined ACV as "the price which an article will bring when offered for sale by one who desires to sell, but is not compelled to do so, and is bought by one who desires to buy, but is not compelled to do so." *State Auto. Mut. Ins. Co. v. Cox*, 218 S.W.2d 46, 48 (Ky. 1949). And, although "Kentucky courts ha[d] long recognized that the application of depreciation is proper in ascertaining the value of the insured property at the time of loss in its then-existing condition," *Snellen*, 675 F. Supp. at 1068, depreciation in the ACV context was never mandated by law or regulation. *See Am. States Ins. Co. v. Mo-Lex, Inc.*, 427

S.W.2d 236, 238 (Ky. 1968) (holding that ACV "is not synonymous with replacement cost, or even replacement cost less depreciation").

Instead, Kentucky's courts historically endorsed the "broad evidence rule," which allowed "the trier of facts [to] consider any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of loss." *Mo-Lex, Inc.*, 427 S.W.2d at 238. The broad evidence rule focused primarily on fair market value. It did not ignore reproduction or replacement values in arriving at ACV but viewed them "merely as guides in making that determination, rather than shackles compelling strict adherence thereto." *Id.* As we recently held in a case from Michigan—where the broad evidence rule is still good law—the rule permitted evidence such as:

> the cost of restoration or replacement of the building less depreciation; the age of the property; the economic value of the property; the condition in which the property is maintained; the income derived from the building's use; the property's location; the degree of obsolescence, both structural and functional; the profit likely to accrue on the property; the material of which the building is composed; the market value; the opinions regarding value given by qualified witnesses; the potential gainful uses to which the building might have been or may be put; the building's value for purposes of rental; and any other facts disclosed by the evidence which may possibly throw light on the actual value of the building at the time of loss, including the property's salvage value, if any.

*Whitehouse Condo. Grp., LLC v. Cincinnati Ins. Co.*, 569 F. App'x 413, 419 (6th Cir. 2014) (quoting *Dickler v. CIGNA Prop. & Cas. Co.*, 957 F.2d 1088, 1097 (3d Cir. 1992)).

## II. Kentucky's ACV Regulation

However, nearly three decades ago, Kentucky revamped its insurance laws to provide greater consumer protections. Ultimately, this led to a shift away from the "broad evidence rule" formula for calculating ACV. In 1984 the Kentucky legislature enacted the Unfair Claims Settlement Practices Act ("UCSPA"), a model consumer protection statute that Kentucky adopted

into its state insurance code. *See* Ky. Rev. Stat. Ann. § 304.12-230. By enacting the UCSPA, Kentucky intended "to benefit damage claimants by requiring insurance companies to act reasonably in negotiating settlements of their claims." *Guaranty Nat. Ins. Co. v. George*, 953 S.W.2d 946, 951 (Ky. 1997). The goal was "to protect the public from unfair trade practices and fraud." *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988).

To that end, Kentucky's Commissioner of Insurance implemented 806 KY. ADMIN REGS. 12:095(9)(2) (1992) (amended 1997) (hereinafter the "ACV Regulation"). *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 98 (Ky. 2000). Section 9 of that regulation establishes "standards for prompt, fair and equitable settlements applicable to fire and extended coverage type policies with replacement cost coverage." More specifically, § 9(2) explains ACV as:

> (a) If the insurance policy provides for the adjustment and settlement of losses on an actual cash value basis on residential fire and extended coverage, the insurer shall determine actual cash value as follows: replacement cost of property at the time of the loss less depreciation, if any. If requested by the insured, the insurer shall provide a copy of the claim file worksheets showing any and all deductions for depreciation.
>
> (b) If the insured's interest is limited because the property has nominal or no economic value, or a value disproportionate to replacement cost less depreciation, the determination of actual cash value as set forth in paragraph (a) of this subsection shall not be required. If requested by the insured, the insurer shall provide a written explanation of the basis for limiting the amount of recovery along with the amount payable under the policy.

806 KAR 12:095(9)(2). Essentially § 9(2)(a) defines ACV using the replacement cost minus depreciation formula. And, in the event that a property's "economic value"[2] was disproportionate

---

[2] Although the regulation offers no definition for "economic value," this word would seem to imply fair market value. Black's Law Dictionary defines economic value as "the rate of worth set on property or services; specif., the amount of money for which property or services could be exchanged or procured if there is a ready market continually resorted to by traders." *Value*, Black's Law Dictionary (10th ed. 2014).

to replacement cost, § 9(2)(b) provides that the ACV formula would not be required, so as to prevent a windfall.

The State Farm policies at issue here do not define ACV. Instead, the parties agree that the policies incorporate the definition provided in Kentucky's ACV regulation, § 9(2)(a), which calculates ACV as replacement cost minus depreciation. However, the parties disagree on the effect of § 9(2)(a) because neither the ACV regulation[3] nor State Farm's homeowner policies define the word "depreciation." Thus the sole question in this appeal is, as the district court held: "whether the installation of materials, i.e. the labor, is subject to depreciation?" *Bailey*, 2015 WL 1401640, at *5. In other words, does depreciation in § 9(2)(a) mean materials and labor, or simply materials?

As Judge Thapar noted in *Brown*, "Kentucky law provides little guidance as to what the term 'depreciation' means in this context," but it is "at least ambiguous." 2016 WL 1644342, at *3, *9 n.3. Because Kentucky courts have never decided this question, our role is a predictive one. *See Bailey v. V & O Press., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985) ("If [a state's] highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it."). When considering a first impression question of Kentucky law on appeal, we must

---

[3] In its brief, State Farm referenced a "consumer awareness announcement" located on the Kentucky Department of Insurance website. (Appellant's Br. page 22). The document, titled "Wind and Hail Deductibles," urges Kentuckians to "carefully review" their homeowner's insurance policies to "fully understand the coverage and deductibles involved before completing the purchase or renewal." It provides phone numbers for citizens to contact consumer protection investigators. As relevant to this appeal, the document contains one paragraph alerting consumers that insurance companies often offer roof repair at a depreciated basis. There is also an example illustrating that ACV payment may be significantly less than replacement cost coverage. Even assuming this were an official interpretation of the ACV regulation, entitled to special agency deference, it nonetheless fails to address the issue at hand. The document says nothing about labor depreciation. As State Farm conceded during oral argument, the DOI website example is merely "guidance for consumers to consult."

attempt to predict how the Kentucky Supreme Court would decide the issue. *Liberty Mut. Fire Ins. Co. v. Kay & Kay Contracting, LLC*, 545 F. App'x 488, 491 (6th Cir. 2013). Sources that may guide the court's determination include "the decisions (or dicta) of the Kentucky Supreme Court in analogous cases, pronouncements from other Kentucky courts, restatements of law, commentaries, and decisions from other jurisdictions." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015).

### III. State Farm's Policies Rely on an Ambiguous Regulation

Here, the State Farm policies are ambiguous because they do not define ACV but simply incorporate Kentucky's ACV Regulation which does not define depreciation. Thus, there are two levels of ambiguity: the contract is ambiguous because it relies on a regulation that is subject to multiple reasonable interpretations. In the insurance context, Kentucky applies the reasonable expectations doctrine which interprets ambiguous terms "in favor of the insured's reasonable expectations." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). "The reasonable expectation doctrine 'is based on the premise that policy language will be construed as laymen would understand it' and applies only to policies with ambiguous terms—e.g., when a policy is susceptible to two (2) or more reasonable interpretations." *Id.* (citing *Ohio Cas. Ins. Co. v. Stanfield*, 581 S.W.2d 555, 560 (Ky. 1979)).

A layperson confronted with State Farm's policy could reasonably interpret the term depreciation to include only the cost of materials. *See Bituminous Cas. Corp. v. Kenway Contracting Inc.*, 240 S.W.3d 633, 641 (Ky. 2007) (policy terms are ambiguous when the parties both offer reasonable but differing interpretations). Yet State Farm could have removed any ambiguity by simply writing its policies to expressly include labor depreciation when calculating ACV. In other states, State Farm has done just this. At oral argument, Plaintiffs stated, without

objection, that State Farm reworded its standard homeowner's insurance policies in Arkansas to expressly depreciate labor and material cost, consistent with Arkansas law. *See* ARK. CODE § 23-88-106(a)(2), (b)(1) (2017). And, following this decision, State Farm can ensure that the wording of any new homeowner's insurance policy it offers in Kentucky defines ACV depreciation to include both labor and materials. The policies at issue in this case, however, do not unambiguously define depreciation.

## IV.   Ambiguous Insurance Policies Construed In Favor of Insured

In interpreting the actual insurance policy, Kentucky law is clear: "A contract of insurance will be construed strictly against the insurer and liberally in favor of the insured." *Aetna Ins. Co. v. Jackson, Owsley & Co.*, 55 Ky. 242 (1855) "[S]ince the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used." *Eyler v. Nationwide Mutual Fire Ins. Co.,* 824 S.W.2d 855, 859-60 (Ky. 1992). And, as the Kentucky Supreme Court held in *Bidwell v. Shelter Mut. Ins. Co.*, 367 S.W.3d 585, 593 (Ky. 2012), insurers can contractually limit their liability by reference to existing law only "*so long as* it is sufficiently conspicuous, plain and clear, to reasonably inform the insured."

An insurance contract "must receive a reasonable interpretation consistent with the parties' expression in the language of the contract." *Branch Banking & Tr. Co. v. Pac. Life Ins. Co*., 520 F. App'x 403, 408 (6th Cir. 2013) (citing *Pryor v. Colony Ins.*, 414 S.W.3d 424 (Ky. Ct. App. 2013). A reasonable construction of the insurance policies in this case is that labor is not included in depreciation. *Black's Law Dictionary* (10th ed. 2014), defines depreciation as "[a] reduction in the value or price of something; specif., a decline in an asset's value because of use, wear, obsolescence, or age." Thus, the district court correctly concluded that depreciating labor does not

make the policyholder whole but rather frustrates the indemnity purpose of ACV coverage. As Judge Wilhoit held:

> [L]abor is not subject to wear and tear. Indeed, the cost of labor to install a new garage would be same as installing a garage with 10 year old materials. In other words, depreciated labor costs would result in **under**indemnification. As the insurance contract is one for indemnity, depreciating the cost of labor violates the contract.

*Bailey*, 2015 WL 1401640, at *6. Therefore, a reasonable insured could conclude that labor does not depreciate. *Id.*; *see also Arnold v. State Farm Fire & Cas. Co.*, 268 F. Supp. 3d 1297, 1312 (S.D. Ala. 2017) (holding, as a matter of first impression in Alabama, the undefined term "ACV" did not unambiguously include depreciation of labor costs).

Moreover, the Supreme Court of Kentucky has held that the UCSPA "should be liberally construed so as to effectuate its purpose" of protecting insured persons. *Reeder*, 763 S.W.2d at 118. Because the ACV Regulation was enacted as part of Kentucky's implementation of the UCSPA, the same principles of liberal construction should also apply to this case. Accordingly, to the extent that the word "depreciation" as used in § 9(2)(a) is ambiguous, this term should be interpreted in favor of the insured.

## V. Majority Rule Is Inapplicable

In support of its argument that labor depreciation serves the purpose of indemnity, State Farm relies on several decisions from other circuits and state supreme courts. The earliest and most widely cited appellate court to address the labor depreciation question was the Oklahoma Supreme Court in *Redcorn v. State Farm Fire and Casualty Company*, 55 P.3d 1017 (Okla. 2002). In *Redcorn*, the majority held that a roof was a "single product consisting of both materials and labor" and that depreciation of the whole product included depreciation of labor costs. *Id.* at 1018. Notably, three justices dissented and rejected the majority's characterization of a roof as a single

product. The Oklahoma Supreme Court dissenters argued that a roof "does not exist until the shingles are transported to the site and installed on top of the house. A roof is not a unified product but a combination of a product (shingles) and a service (labor to install the shingles)." *Id.* at 1022 (Boudreau, J., dissenting). In this case, Judge Wilhoit found the *Redcorn* dissent highly persuasive and held that "[d]enying the distinct nature of labor as a component runs afoul logic." *Bailey*, 2015 WL 1401640, at *8.

However, as State Farm correctly argues in its brief, "the substantial weight of authority" tends to follow the *Redcorn* majority opinion rather than the dissent. In addition to Oklahoma, the Supreme Courts of Nebraska and Minnesota have also held that labor depreciation is permitted when calculating ACV. *Henn v. Am. Family Mut. Ins. Co.*, 894 N.W.2d 179, 190 (Neb. 2017); *Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780, 785 (Minn. 2016) (same). Two federal appellate courts have also ruled in favor of insurers. *In re State Farm Fire Cas. Co.* (*LaBrier*), 872 F.3d 567, 575-76 (8th Cir. 2017); *Graves v. Am. Family Mut. Ins. Co.*, 686 F. App'x 536, 540 (10th Cir. 2017). Those cases, however, are not similarly situated. As explained above, two distinct formulas exist for calculating the ACV of damaged property. Some states—like Kentucky, post-1992—use the replacement cost less depreciation formula, and others still employ the broad evidence rule, or some form of fair market valuation.

State Farm overlooks the fact that the cases on which it relies—*Redcorn*, *Henn*, *Wilcox*, *LaBrier*, and *Graves*—come primarily from states where the broad evidence rule applies or where the policies at issue expressly define ACV.[4] On the other hand, courts that have endorsed the

---

[4] For example, State Farm cites *Basham v. United Servs. Auto. Ass'n*, No. 16-CV-03057-RBJ, 2017 WL 3217768, at *3 (D. Colo. July 28, 2017), but the policy at issue in that case expressly defined ACV in the text of the contract. Because of that important factual distinction, the Colorado district court in *Basham* found Judge Wilhoit's reasoning "unpersuasive." *Id.*

minority position come from states with laws or regulations like Kentucky, which prescribe a replacement cost less depreciation formula. Accordingly, as Plaintiffs note, "the instructive precedents are not those from states that reject reproduction cost, but those that define actual cash value as replacement cost less depreciation, like Illinois, Ohio, and Alabama."

For example, in *Arnold v. State Farm Fire and Casualty Company*, 268 F. Supp. 3d 1297, 1304-05, 1312 (S.D. Ala. 2017), the court construed policy language materially identical to the policies here, and, applying Alabama's similar regulation, held that State Farm's policy did not unambiguously allow depreciation of labor costs when calculating ACV. *See also Ingram v. Liberty Ins. Co.*, No. 16CVH06-5538, slip op. at 5-6 (Ohio Cir. Ct. Mar. 13, 2018) (recognizing ambiguity in calculating ACV under Ohio's regulation because "it is apparent that there are at least two distinct ways to interpret the depreciation component of the calculation of actual cash value"); *Sproull v. State Farm Fire & Cas. Co.*, No. 16-L-1341, slip op. at 2-3, 6 (Ill. Cir. Ct. Feb. 26, 2018) (rejecting State Farm's contention that an Illinois ACV regulation—similar to Kentucky's— somehow permitted labor to be depreciated, because depreciation of labor could cause under indemnification of the insured, thus defying the purpose of the insurance policy).

## VI. Effect of § 9(2)(b)

Finally, if we were to adopt State Farm's argument, § 9(2)(b) of the ACV Regulation would be rendered meaningless. State Farm contends that as property ages, it will always be roughly proportionate to its market value. But under that theory, once property has exceeded its useful lifespan, it bears an ACV of zero. To make such a claim, State Farm must ignore the plain language of § 9(2)(b).

Kentucky's Commissioner of Insurance expressly included subsection (b) in the ACV regulation to provide a safeguard for insurers. In cases where ACV's inclusion of undepreciated

labor costs results in an overvaluation of a valueless structure, or a "disproportionate" valuation of a low-value structure, subsection (b) allows insurers to dispense with the standard replacement cost less depreciation formula—as prescribed in subsection (a). As Plaintiffs correctly note:

> Subsection (b) of the ACV Regulation plainly recognizes that ACV valuation will sometimes produce "disproportionate" values and overvalue property that has "nominal or no economic value." But in State Farm's view, that eventuality could never occur. ACV would always value valueless properties as valueless, and always value low-value properties in rough proportion to their market value. Were State Farm correct, subsection (b) would have no application and would never have needed to be written.

(Appellee's Br. at 18). For this reason, State Farm's interpretation of the ACV regulation to include labor depreciation does not pass muster. The Kentucky Supreme Court has held that "one of our basic tenets of statutory construction" is that a statute or regulation's drafters "intended 'for all of [its] parts to have meaning.'" *City of Fort Thomas v. Cincinnati Enquirer*, 406 S.W.3d 842, 850 (Ky. 2013) (quoting *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)). Under State Farm's approach, subsection (b) "becomes mere surplusage, being subsumed by and adding nothing to [subsection (a)]." *Id.* The district court's holding that labor costs should not be depreciated is the most reasonable interpretation of Kentucky law.[5]

**AFFIRMED**.

---

[5] Of course, in cases involving property with nominal economic value or an economic value disproportionate to replacement cost less depreciation, § 9(2)(b) of the ACV regulation provides that that the insurer can use a valuation other than that set forth in § 9(2)(a). Therefore, other than the rare case—where the property has an extremely lower or higher economic value—labor should not be depreciated. Yet in such a rare case, so as to prevent an absurd result or windfall for the insured, § 9(2)(b) leaves open the possibility of using a fair market valuation, in which the trier of fact could consider labor depreciation as a factor.

GRIFFIN, Circuit Judge, dissenting.

Kentucky law provides that the purpose of insurance is to place the insured back in a position to where she was, no better and no worse. *Great Am. Ins. Co. v. Crume*, 99 S.W.2d 742, 744 (Ky. 1936). In finding Kentucky's "actual cash value" (ACV) regulation ambiguous, the majority discards this well-established overlay and grants a windfall to the insureds. Because the regulation is not ambiguous, I would reverse the district court's judgment and therefore respectfully dissent.

State Farm's homeowners' insurance contracts provide for a two-step reimbursement process for property damage. First, "until actual repair or replacement is completed," State Farm pays the "actual cash value at the time of the loss" as defined by Kentucky law. Second, "when the repair or replacement is actually completed," State Farm pays an additional amount to cover the repair or replacement. The majority's adoption of the district court's "underindemnification" concern wrongly focuses on replacement cost as the way Kentucky courts view indemnity; replacement cost and ACV are two different concepts under the terms of the contract, and more importantly, under Kentucky law. *See, e.g.*, *Am. States Ins. Co. v. Mo-Lex, Inc.*, 427 S.W.2d 236, 237 (Ky. 1968); *State Auto Mut. Ins. Co. v. Cox*, 218 S.W.2d 46, 47 (Ky. 1949).

Kentucky law defines ACV as the "replacement cost of property at the time of the loss less depreciation, if any." 806 KAR 12:095(9)(2)(a). Absent from this definition is any qualifying or limiting language constricting "depreciation." It does not provide: "replacement cost of property at the time of the loss less depreciation of materials only, if any." Kentucky courts "apply the same rules that are applicable to statutory construction and interpretation" to "the interpretation of administrative regulations." *Comprehensive Home Health Servs., Inc. v. Prof'l Home Health Care Agency, Inc.*, 434 S.W.3d 433, 441 (Ky. 2013). This means we are to interpret the regulation

according to its plain meaning, *id.*, and not "rewrite . . . [it] to include a matter not contained therein." *Commonwealth v. Taylor*, 945 S.W.2d 420, 423 (Ky. 1997). In my view, because the plain meaning of the ACV regulation broadly provides for any and all depreciation, it is not ambiguous and State Farm may depreciate materials and labor when calculating ACV. *See also Basham v. United Servs. Auto. Ass'n*, 2017 WL 3217768, at *2 (D. Colo. July 28, 2017) ("The policy could have forbidden depreciation of labor costs if it said something like: repair and replacement costs are 'subject to a deduction for depreciation *of materials only*.' But that is not what the policy says." (alteration omitted)).

On this point, the Kentucky agency that promulgated the ACV regulation agrees. Its consumer guidance publication illustrates how depreciation works under the regulation:

> If your policy provides ACV coverage on your roof and your shingles are 12 years old, they may be rated with a life expectancy of 20 years depending on material. If the cost of replacing your roof is $14,000, your insurer will apply 60 percent (12/20) depreciation and pay the ACV of $5,600 less your deductible.

*Consumer Awareness Announcement: Wind and Hail Deductibles, Ky. Dep't of Ins.* (Aug. 2012), http://insurance.ky.gov/documents/windhaildeductannounce081512.pdf. This example does not differentiate between labor and material costs, and instead depreciates the costs as a whole— representing the economic value of the insured structure. Further, this makes sense considering the unambiguous nature of the regulation; yet, the majority discounts this example because it "says nothing about labor depreciation." But it does—it is an assumption baked into the example, without which the math fails. Put differently, it says everything about depreciation's breadth, and nothing about limiting it to only depreciation of materials.

Such a reading also comports with the weight of the authority across the country.[1] For example, in *Graves v. American Family Mutual Insurance Co.*, the Tenth Circuit rejected the majority's use of Black's Law Dictionary to singularly-focus on materials versus labor:

> [W]e see no reason to dissect depreciation into separate components of materials and labor costs in the first instance. "Depreciation" is defined as "[a] decline in an asset's value because of use, wear, obsolescence, or age." *Black's Law Dictionary* (10th ed. 2014). A "depreciation method" is "[a] set formula used in estimating an asset's use, wear, or obsolescence." *Id.* *Black's Law Dictionary* describes ten different depreciation methods, none of which involves distinguishing materials from labor costs. Rather, its descriptions focus on the asset itself and various approaches to determining its value as a whole. Based on the plain and ordinary meaning of "depreciation," a reasonably prudent insured would not expect the insurer to apply such an unorthodox depreciation method when determining actual cash value.

686 F. App'x 536, 540 (10th Cir. 2017) (emphasis added). In addition, the Eighth Circuit has even more forcefully dissected the majority's fine-cutting between materials and labor:

> [T]he district court ignored what State Farm was estimating—the depreciated value of the damaged property *at the time of loss*. . . . [A] more precise estimate of that value would depreciate *the full original cost* of the asset to account for its decline in value over time. State Farm's depreciation method reasonably substitutes replacement cost for original cost because that value is more readily available and to the insured's advantage. But to avoid further distorting the value estimate, State Farm depreciates *the full replacement cost* of the asset, typically, the amount a contractor will charge to replace the roof and other damaged parts, which includes the cost to install as well as the cost of materials. In evaluating a depreciation method in this context, it matters not whether "labor" is customarily depreciated in other business accounting contexts. The question is whether depreciating what a contractor will charge to replace the partial loss is a reasonable method of estimating "the difference in value of the property immediately before and immediately after the loss."

*In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 574 (8th Cir. 2017) (citation omitted and underlined emphasis added). Finally, in *Papurello v. State Farm Fire & Casualty Co.*, the Western

---

[1] That courts have split on the issue does not make the term ambiguous. *See, e.g.*, *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73, 79 & n.11 (Ky. 2010).

District of Pennsylvania similarly rejected the majority's divide-and-conquer approach when examining State Farm's two-step policy:

> When a roof is in issue, as it is here, the "plain and ordinary" meaning of the "property" to which the Policy refers is the *finished* product in issue—the *result* or physical manifestation of combining knowhow, labor, physical materials (including attendant costs, *e.g.,* the incurrence of taxes), and anything else required to produce the final, finished roof itself.
>
> To adopt plaintiffs' view that "property"—as used in step one of the Policy—equates to "all *physical* materials required to produce the covered building *but nothing else*" strains reason. The ordinary meaning of "property" is "any external thing over which the rights of possession, use, and enjoyment are exercised." *Property,* Black's Law Dictionary (9th ed. 2009). The property owner exercises the right to possess, use, and enjoy the *outcome* of combining labor, tax costs, and materials—*i.e.,* the property itself in its finished form. In the same sense, defendant indemnified plaintiffs at step one of the Policy against the loss of the value of the *outcome* of combining labor, tax costs, and materials—*i.e.,* the covered property itself. Defendant promised full replacement cost (including tax, labor, and materials costs) at step *two* of the Policy—not step one. As used in the Policy, "property" cannot reasonably be interpreted in the manner plaintiffs urge.

144 F. Supp. 3d 746, 770 (W.D. Pa. 2015) (some citations omitted and underlined emphasis added).

These interpretations are sensible in light of Kentucky case law tying property insurance to the whole and not its parts: "It must not be overlooked that the thing insured is the building or structure as such and not the materials of which it is composed." *Horn v. Atlas Assur. Soc.*, 43 S.W.2d 675, 677 (Ky. 1931). Further, they avoid windfalls to the insured:

> [If an insurance company] could depreciate only the cost of materials in determining the actual cash value of [an insured]'s loss, she would receive a windfall based on labor costs she never incurred with respect to her [damaged property]. Such a result is contrary to the principle of indemnity because she would be in a better position than she was before the damage occurred. Had she wanted to recover the full replacement cost under her policy she should have had the repairs completed by the one-year deadline.

*Graves*, 686 F. App'x at 539.

The majority acknowledges these (and other) cases represent the "substantial weight of authority" on the issue. Yet, it holds Kentucky's Supreme Court would join the minority view, distinguishing these cases only because they generally arise from broad evidence rule states. This is a distinction without a difference. As discussed, Kentucky's replacement cost minus depreciation formula is the method to calculate the economic value of damaged property at the time it was damaged. And more to the point, the distinction matters not because the regulation is unambiguous.

Finally, I do not agree with the majority that this reading of depreciation renders § 9(2)(b) "meaningless." In its view, depreciating labor costs for a property past its useful lifespan will lead to an ACV of zero, thus nullifying § 9(2)(b). Yet, Kentucky case law provides examples of when an estimated cost to repair property after depreciation can still be more than the property's value. *See, e.g.*, *Mo-Lex*, 427 S.W.2d at 239–40. In such an instance, Kentucky law—i.e., § 9(2)(b)— would eschew its preferred actual cash value formulation and is therefore not meaningless.

For these reasons, I respectfully dissent. I would reverse the district court and remand with instructions to enter judgment in State Farm's favor. In my view, the insurance policy unambiguously permits State Farm to depreciate labor costs when calculating actual cash value.